### FELDMAN & CO. v. CITY COUNCIL OF CHARLESTON.

#### STANLEY v. SAME.

1. A large portion of the city of Charleston having been laid waste by fire, the legislature authorized the City Council to issue its bonds and lend them to persons who desired to rebuild in the burnt district. Bonds of said city, called "Fire Loan Bonds," were accordingly issued and lent after the year 1868, and put upon the market. *Held*, that these bonds were not valid obligations of the city.

2. The legislature has no power to levy taxes for the purpose of assisting private individuals in carrying out private enterprises, even though incidental advantages may result to the public.

3. Under art. I., § 41, of the constitution of 1868, the taxing power of the legislature, even in the absence of any express restrictions upon them, can be exercised only for some public purpose.

4. Authority given to a municipal corporation to issue bonds, necessarily involves the power to levy taxes for their payment.

5. Where bonds were issued by a city to be lent "to such applicants as will build up and rebuild the waste places and burnt districts of said city, or erect improvements upon their lots." *Held*, that the bonds so issued and lent were for private purposes, notwithstanding advantages might incidentally accrue to the city.

6. This case distinguished from cases sustaining local taxation in aid of railroads; and also from the case of *Herndon* v. *Moore*, 18 *S. C.*, 339.

7. In doubtful cases the constitutionality of an act of the legislature will be affirmed, but it is for the courts, not the legislature, to determine whether a statute is beyond the powers granted to the legislature; and

when that body has clearly overstepped its constitutional powers, it is the right and the duty of the courts to so declare.

8. As the City Council had no power to create the obligation, their payment of interest on these Fire Loan Bonds, their suits upon the securities received in exchange therefor, and the purchase by them in market of such their bonds, do not estop the city from now disputing the validity of these bonds.

Before WITHERSPOON, J., Charleston, November, 1883.

The opinion of this court fully states these two cases. The Circuit decree in the cause first stated, B. Feldman & Co. *v.* The City Council of Charleston, was as follows:

This cause came on for trial by the court. The complaint is filed in this case to establish the liability of the defendants for coupons due on certain obligations known as "Fire Loan Bonds." The defence set up in answering is that the "defendants are advised that the issue of said bonds was unconstitutional, and that the City Council are not liable for the same." It appears that the bonds in question were issued subsequent to the adoption of the constitution of 1868.

The history of the bonds now in issue is briefly stated. On August 28, 1866, the City Council of Charleston, "for the purpose of aiding in the rebuilding of the city of Charleston, a great part of which is now (then) lying in ruins," passed an ordinance authorizing the mayor of the city, in the name of the City Council, to issue certain bonds, not to exceed in amount $2,000,000. In the ordinance special provision is made to secure the city, as far as it could be done, against loss, because of the assistance so afforded in rebuilding the city. On December 19, 1866, the ratification of this ordinance was made by the legislature of the State in its act "giving authority to the City Council of Charleston to proceed in the matter of a fire loan, with a view to aid in building up the city anew." On February 28, 1870, the legislature declared that "authority is hereby given to the City Council of Charleston to amend an ordinance entitled 'An ordinance to aid in rebuilding the burnt district and waste places, ratified the 28th August, 1866,'" which said ordinance was confirmed and ratified by an act of the general assembly passed September 19, 1866.

The issue of the bonds in question depends on the power of the legislature to give validity, by its ratification of it, to this ordinance of the City Council. It is otherwise stated simply, equivalent to the question of the power of the legislature to issue these bonds. This question must be regarded as having been too distinctly decided by the highest tribunal in this State to be now disturbed. In *Copes* v. *City of Charleston* (10 *Rich.*, 491), the Court of Errors said, in deciding the question whether the terms of the charter were "sufficient to cover the power exercised by the City Council in subscribing to railroads," that there were "no restrictions in legislative power which in this State is vested by the constitution in the general assembly except those which deny certain powers, or which by implication arise because certain powers are conferred by Congress. So far as legislative power is concerned, subject to the restrictions suggested, the general assembly have all the powers of the parliament of Great Britain." The validity of the subscription was sustained. In 1872, the principle of this decision was brought under review in the case of *Gage* v. *Charleston* (3 *S. C.*, 491), and the court reaffirmed the decision in *Copes* v. *Charleston*. In *Brown* v. *C. & L. R. R. Co.* (13 *S. C.*, 290, November term, 1879), the court said: "There is no constitutional restriction depriving the legislature of the power of authorizing counties to incur obligations."

In this case, the general assembly of the State was fully advised of the purpose contemplated by the City Council for which this and the like bonds were to be issued. The ratification of the ordinance manifested by the act giving authority to the City Council was so clearly the expression that it was for a public and not a private purpose, that without the judicial exposition of the legislative power, and the subsequent ratification in 1870, it cannot be supposed that the power given to the City Council was outside of the power it had under the constitution.

If the question before the court was involved in doubt, the language of the State Supreme Court, in *Ex parte Lynch* (16 *S. C.*, 32), would direct me in the judgment I must render. "The constitutionality of the law (said the court) must be presumed until the violation of the constitution is proved beyond all

reasonable doubt, and a reasonable doubt must be solved in favor of the legislative action and the act be sustained." This act is not of recent date. These bonds have been issued; have passed through various hands without question as to their validity, and it would be necessary that the alleged violation of the constitution should be plainly demonstrated before the court would declare the bonds invalid. I must conclude that the legislature did not exceed its power in authorizing the issue of these bonds, and the judgment of the court is that the plaintiff is entitled to the relief asked for.

It is therefore ordered and adjudged that the above named plaintiff do recover judgment against the City Council of Charleston for, &c.

In the case of Robert B. Stanley *v.* the same defendant, the same decree was rendered.

From these two decrees, the defendants appealed upon the following exceptions: "I. That his honor erred in not dismissing the complaints in the said cases when he found that the bonds and coupons set forth in the complaints were issued by the defendants after the adoption of the constitution of 1868. II. That his honor erred in not dismissing the complaints on the ground that the issue of the bonds and coupons set forth in the complaints were in violation of section 23 of article I., and section 8 of article IX., of the State constitution of 1868. III. That his honor erred in holding that the bonds and coupons sued on in the complaints stand on the same footing as bonds issued in aid of railroads and are governed by the same principles. IV. That his honor erred in not dismissing the complaints on the ground that the issue of said bonds and coupons was in violation of article 5 of the amendments of the constitution of the United States."

*Messrs. G. D. Bryan* and *B. H. Rutledge,* for appellants.

*Messrs. A. G. Magrath, S. Lord,* and *Simons & Seigling,* contra.

April 23, 1885. The opinion of the court was delivered by MR. JUSTICE McIVER. These two cases, involving the same

principles, were argued and will be considered together.   They grow out of the following state of facts: All the buildings on a very large portion of the city of Charleston having been destroyed by fire, the City Council passed an ordinance on August 28, 1866, providing for the issue of bonds of the said city to an amount not exceeding $2,000,000, to be loaned to individuals for the purpose of enabling them to "build up and rebuild the waste places and burnt districts of the city of Charleston, or erect improvements upon their lots," under such terms and regulations as were prescribed in the ordinance.   Doubts being entertained as to the power of the City Council to accomplish the proposed object "without the permission and license of the general assembly," an act was passed by that body September 19, 1866, which, after setting out in full the ordinance which had been passed by the City Council, declared: "That all and singular the provisions of the aforesaid ordinance of the City Council of Charleston be, and the same are hereby, authorized and confirmed; and authority is hereby given to the said City Council of Charleston to proceed in the premises and to carry into effect the foregoing provisions."

In pursuance of the provisions of this ordinance, the City Council of Charleston, from time to time, issued its bonds, commonly called "Fire Loan Bonds," and loaned the same to various individuals, under the terms and regulations prescribed.   The plaintiffs in the cases above stated, being the owners and holders of some of these bonds, all of which were issued after the adoption of the constitution of 1868, brought these actions on certain past due coupons of said bonds, and the defence set up was that the act authorizing the issue of these bonds is unconstitutional, and that therefore the City Council is not liable for the same.   The Circuit Judge held that the question was concluded by the cases of *Copes* v. *City of Charleston* (10 *Rich.*, 491), *Gage* v. *Charleston* (3 *S. C.*, 491), and *State ex rel. Brown* v. *C. & L. R. R. Co.* (13 *Id.*, 290), and rendered judgment for the plaintiffs in both of these cases.   From these judgments defendants appeal and present for our adjudication the single question as to the constitutionality of the law authorizing the issue of the bonds in question. .

It is not denied that if the legislature could itself lawfully authorize the issue of the bonds, it could lawfully delegate such authority to the City Council, and therefore the real question for us to determine is whether the legislature had the power to issue the bonds for the purposes stated. It will not be denied that the power to issue the bonds necessarily implied the power to levy taxes to provide for the payment thereof; and therefore the inquiry is narrowed down to the question whether the legislature has the power to levy taxes for the purpose of assisting private individuals in carrying out private enterprises, even though such private enterprise may result in incidental advantages to the public.

The power to levy taxes is essential to the existence of any government, but it is not, and from the very nature of the subject cannot be, an unlimited power. Even in the absence of any express constitutional restriction it cannot be said that the power of the legislature to impose taxes is unlimited, for that would necessarily imply that the legislature, under the guise of imposing taxes might exercise the power of confiscation. Hence it seems to be universally conceded, even by those who are disposed to enlarge the taxing power of the legislature to its greatest extent, that a law authorizing taxation for any other that a public purpose is void. As is said by Cooley in his work on *Constitutional Limitations* (p. 487): "Everything that may be done under the name of taxation is not necessarily a tax; and it may happen that an oppressive burden imposed by the government, when it comes to be carefully scrutinized, will prove, instead of a tax, to be an unlawful confiscation of property, unwarranted by any principle of constitutional government."

In *Allen* v. *Jay* (60 *Me.*, 124, 11 *Am. Rep.*, 185) it is said: "A tax is a sum of money assessed under the authority of the State on the person or property of an individual for the use of the State. Taxation, by the very meaning of the term, implies the raising of money for public uses, and excludes the raising if for private objects and purposes." In *Lowell* v. *City of Boston* (111 *Mass.*, 454, 15 *Am. Rep.*, 45) we find this strong language: "The power to levy taxes is founded on the right, duty, and responsibility to maintain and administer all the governmental functions

of the State, and to provide for the public welfare. To justify any exercise of the power requires that the expenditure which it is intended to meet shall be for some public service, or some object which concerns the public welfare. The promotion of the interests of individuals, either in respect of property or business, although it may result incidentally in the advancement of the public welfare is, in its essential character, a private and not a public object. However certain and great the resulting good to the general public, it does not, by reason of its comparative importance, cease to be incidental. The incidental advantage to the public, or to the State, which results from the promotion of private interests, and the prosperity of private enterprises or business, does not justify their aid by the use of public money raised by taxation, or for which taxation may become necessary. It is the essential character of the direct object of the expenditure which must determine its validity as justifying a tax, and not the magnitude of the interests to be affected, nor the degree to which the general advantage of the community, and thus the public welfare, may be ultimately benefited by their promotion." To the same effect see *Loan Association* v. *Topeka* (20 *Wall.*, 655), and *Parkersburg* v. *Brown* (106 *U. S.*, 487).

When in addition to this we find that the constitution of 1868, in art. I., sec. 41, expressly declares that "the enumeration of rights in this constitution shall not be construed to impair or deny others retained by the people, and all powers not herein delegated remain with the people," we think there can be no doubt that even in the absence of any express restriction upon the taxing power of the legislature such power can only be exercised for some public purpose, and that whenever it is attempted to be exercised for a private purpose, it is the duty of the courts to declare such legislation void.

Our next inquiry is, whether the purpose for which the bonds in question were issued, and which necessarily involved the power to levy taxes for their payment, was a public purpose. The purpose, as declared by the ordinance, which has been ratified by the act of the legislature, was "to make loans of said bonds to such applicants as will build up and rebuild the waste places and burnt districts of the city of Charleston, or erect improvements

upon their lots." That this was a private, and not a public pur-
pose, seems to us clear. The real object was to loan the credit
of the city to private individuals to afford them aid in repairing
their losses occasioned by a disastrous fire. It was practically
nothing more nor less than lending the credit and funds of the
city to private individuals to aid them in building on their own
lots dwellings, stores, warehouses, or such other structures as
their interest or convenience might prompt, for their own indi-
vidual use, and to promote their own individual comfort or gain.
There was nothing whatever in it of a public nature. The public
were not to have any interest in, or control over, the structures
which were thus to be erected by the aid of the public funds,
but they were for the sole use, and under the exclusive control,
of the individual owners, precisely like any other private pro-
perty owned by any other private individuals residing or owning
property in the city.

We cannot conceive how it is possible to invest the manifest
purpose of this loan on the part of the city with a public charac-
ter. It is true that there would be incidental advantages accru-
ing to the city by the increase of it taxable values, and in various
other ways that might be suggested, but these are mere incidental
advantages which attend any improvements made in a city, even
where they are exclusively the work of private individuals, made
with their own private funds, and cannot, therefore, have the
effect of converting the purpose from a private into a public pur-
pose. These views are fully sustained by the cases of *Allen* v.
*Jay*, *Loan Association* v. *Topeka*, *Parkersburg* v. *Brown*, and
*Lowell* v. *City of Boston*, cited above.

It is argued, however, and the Circuit Judge rested his deci-
sion upon such argument, that the question is concluded by the
decisions which maintain the constitutionality of acts affording
aid in the construction of railroads. It is true that the consti-
tutionality of such legislation seems to be settled by the weight of
authority, though grave doubts have been entertained by some
whose authority is entitled to the highest consideration as to the
correctness of such decisions. Conceding, however, for the pur-
poses of this case, that such legislation is constitutional, we think
that it does not by any means follow that such decisions are con-

clusive of the question now under consideration. Most of these cases recognize fully the doctrine which we have laid down in this opinion, that the power of taxation is not unlimited, and that it cannot be exercised except for some public purpose. In one of the leading cases on the subject (*Sharpless* v. *Mayor of Philadelphia*, 21 *Penn. St.*, 160), in which Black, C. J., in an elaborate opinion, sustains the constitutionality of legislation in aid of railroad companies, that distinguished jurist expressly admits "that a law authorizing taxation for any other than public purposes is void," and he rests his decision upon the ground that the construction of a railroad is a public purpose, and hence that it is one of the objects for which taxation may be used.

So in *Olcott* v. *The Supervisors* (16 *Wall.*, 678), while considering a similar question, Mr. Justice Strong says: "No one contends that the power of a State to tax, or to authorize taxation, is not limited by the uses to which the proceeds may be devoted. Undoubtedly taxes may not be laid for a private use." But he goes on to argue that railroads, although owned and constructed by private corporations, are public highways; that the right of eminent domain, which can only be exercised for public purposes, may be exerted to facilitate their construction; and that they are open to the use of the public under such regulations as may be prescribed, and therefore he concludes that the construction of a railroad is such a public purpose as to warrant the imposition of taxes in aid of its construction.

In *Dillon on Mun. Corp.*, § 105*b*, after speaking of the various decisions which seem to have established the constitutionality of legislation in aid of the construction of railways, that distinguished author says: "But it is obvious, from this statement of the grounds upon which the validity of such legislation rests, that it furnishes no support for the validity of taxation in favor of enterprises and objects which are essentially private. We consider the principle equally sound and salutary, that the mere incidental benefits to the public or the State, or any of its municipalities or divisions, which result from the pursuit by individuals of ordinary branches of business or industry, do not constitute a public use in the legal sense which justifies the exercise either of the power of eminent domain or of taxation."

We are satisfied that the conclusion reached by the Circuit Judge cannot be sustained by the decisions sustaining the constitutionality of legislation in aid of the construction of railways.

It may be, and has been, said that while the power of taxation is limited, so that it can only be applied to a public purpose, yet it is for the legislature, and not for the courts, to determine what are public as contradistinguished from private purposes; and that when the legislature has passed an act granting aid to any enterprise, it must be assumed that they had first determined that the purpose or object which they had in view was a public purpose, as it cannot be properly assumed that the legislature would wilfully transcend its constitutional powers. If, as we have seen, the power of taxation is limited by the use to which it is to be applied, and if the legislature is restricted in the exercise of the taxing power by the use to which the taxes are to be applied, it would be strange indeed if it was to be the final judge as to the limits within which its own power is restricted. This, as we have said, in discussing a similar question in the recent case of *Whaley* v. *Gaillard, Treasurer* (21 *S. C.*, 560), would amount to no restriction at all.

If the same body whose power is intended to be restricted is to finally determine when it has reached the limits beyond which it is forbidden to go, there would be, practically, no limitations upon its powers. As we understand it, one of the very objects for which this court was constituted, was to determine finally, not only the construction, but also the constitutionality of the laws passed by the law-making power. True, as has been well said, in *Ex parte Lynch* (16 *S. C.*, 32): "It is a delicate thing to declare an act of the legislature unconstitutional. * * * Implied limitations of legislative power are only admissible where the implication is necessary. * * * The constitutionality of a law must be presumed until the violation of the constitution is proved beyond all reasonable doubt, and a reasonable doubt must be solved in favor of legislative action, and the act be sustained." But when the legislature has clearly overstepped its constitutional powers, it is not only the right, but the duty, of this court so to declare.

We are satisfied that it is settled beyond all dispute that the

legislature has no power to impose taxes, except for some *public* purpose, and we think it equally clear, not only from reason, but from authority entitled to the highest consideration, that the purpose of the act under consideration was to aid *private* individuals in carrying out *private* enterprises, and therefore that the purpose of the act was *private*, and not *public*, although such enterprises might prove of incidental advantage to the public. In *Allen* v. *Jay, supra*, an act authorizing a town to loan its credit to certain private individuals to aid them in establishing a mill and factory in such town was declared unconstitutional, although the establishment of such an enterprise in the town would prove to be of incidental advantage to the public.  In *Loan Association* v. *Topeka, supra*, an act authorizing the city of Topeka to issue bonds to be used in aid of the establishment by a private corporation in said city of shops for the manufacture of iron bridges and works of that kind was declared unconstitutional, because of the fact that the purpose to be accomplished was a private and not a public purpose, although it was conceded that the establishment of such works would be of collateral advantage to the public.  In *Parkersburg* v. *Brown, supra*, an act authorizing the city of Parkersburg to issue its bonds for the purpose of lending the same to persons engaged in manufacturing in or near said city was declared to be unconstitutional on similar grounds.  Finally, in *Lowell* v. *Boston, supra*, an act, which in no essential particular differs from the one now under consideration, authorizing the city of Boston to issue its bonds and loan the same "to the owners of land, the buildings upon which were burned by the fire in said Boston," for the purpose of aiding such persons in rebuilding, was declared to be unconstitutional upon the same grounds, notwithstanding the magnitude of the calamity from the effects of which it was desired to relieve the sufferers.

Now, there can be no doubt that, in each and all of these cases, as well as in the case now under consideration, the principal *motive* which prompted the legislature to adopt the legislation in question was the belief that thereby the public welfare would be promoted by securing the completion of enterprises which would add to the taxable values of the several towns or cities, and in

various other ways promoting the interests of the public. But this was not held to be sufficient, and could not properly be so held; for the same reasoning would authorize the extension of aid to any enterprising private individual who desired to enlarge his business, and did not have the means of doing so without aid from the public treasury; for if his business was enlarged, the taxable values of the community would be increased, and many other incidental advantages would accrue to the public. Yet no one would contend that a grant of legislative aid in such a case would be valid, notwithstanding the incidental benefits which the public might thereby receive, because the purpose to which the public money was to be applied would be essentially *private* and not *public*, and therefore wholly unauthorized. So in the case now under consideration the purpose to which it is proposed to apply the public money is essentially private and not public. The buildings to be erected by the aid of the public money would still remain the private property of the owners, under their exclusive control and for their sole use, just as much so as any other private property in the city.

We are entirely satisfied, therefore, that the act in question is without constitutional authority and void. From this it follows that the bonds in question constitute no valid obligation of the city of Charleston and hence no action can be maintained to enforce their payment.

It is argued, however, that the usage and practice of the various departments of the State government have so fully recognized these bonds that it is too late now to question their validity; and the case of *Herndon* v. *Moore* (18 *S. C.*, 339) is relied upon. That case, however, differs in many essentials from this. There, the power of the Court of Probate to make partition of real estate had been repeatedly recognized both by the legislative and judicial departments of the government, and rights had been acquired, titles vested, and money paid upon the faith of such recognitions of these two departments of the government, and to relieve parties who had thus acted upon the confidence which they might naturally repose in the combined action of these two departments of the government, the doctrine of *communis error facit jus*, admitted to be an exceptional doctrine, was applied. But in the

case now under consideration, we do not find any such combined action of these two departments of the government. On the contrary, on every occasion where these bonds have been brought before the courts, the constitutionality of the legislation authorizing their issue has been assailed; and we are not informed of any instance in which any court has assumed or acted upon the assumption that such bonds constituted valid obligations of the city of Charleston.

It is true that there are instances in which the old fire loan sterling bonds, issued by the State, under the act of 1838, have been recognized as valid obligations, though no instance has been brought to our attention in which the constitutionality of the act authorizing their issue has been raised. But we are not dealing with that class of bonds. They were issued under the former constitution of the State, and rest upon a different foundation from the fire loan bonds issued by the city of Charleston since the adoption of the constitution of 1868, and it is the validity of these alone that we are now called upon to consider.

Again, it is said that the City Council of Charleston are estopped by their own acts from disputing the validity of these bonds: by paying interest on them from time to time, by purchasing them in the market, and by suing the bonds of private individuals to whom these fire loan bonds have been issued. If the City Council was never invested with power to issue the bonds, it is difficult to understand how any act they might do could estop them from disputing their validity. If they could not create the obligation by the formal act of signing the bonds, through their proper officer, under the seal of the corporation, we cannot conceive what other act could give the bonds any greater validity. It may well be that it is not only the right, but the duty of the City Council to collect from those who have borrowed the amounts due by them, and apply the same to the payment of the fire loan bonds; and that by proper proceedings they may be compelled so to do (*Parkersburg* v. *Brown*, 106 *U. S.*, 487, and *City Council of Charleston* v. *Caulfield*, 19 *S. C.*, 201), but that is not the question now before us. All that we are now called upon to determine is whether the bonds, from which the coupons sued upon in these cases were taken, constitute valid obligations of the City

Council of Charleston, which can be enforced by judgment; and we hold that they are not. That the payment of interest on these bonds does not constitute an estoppel. See *Loan Association* v. *Topeka, supra.*

The judgment of this court is that the judgment of the Circuit Court in each of the cases named at the head of this opinion be reversed, and that the complaint in each of said cases be dismissed.