## 21456

STATE of South Carolina, ex rel. Daniel R. McLEOD, Attorney General, Plaintiff, v. Richard W. RILEY, Governor of the State of South Carolina, as ex officio Chairman and member of the State Budget and Control Board, Grady L. Patterson, Jr., Treasurer of the State of South Carolina, Earle E. Morris, Jr., Comptroller General of the State of South Carolina, Rembert C. Dennis, Chairman of the Finance Committee of the South Carolina Senate, and Tom G. Mangum, Chairman of the Ways and Means Committee of the South Carolina House of Representatives, as ex officio members of the State Budget and Control Board, Defendants,

and

STATE of South Carolina, ex rel. Daniel R. McLEOD, Attorney General, Plaintiff, v. Richard W. RILEY, Governor of the State of South Carolina, as ex officio Chairman and member of the State Budget and Control Board, Grady L. Patterson, Jr., Treasurer of the State of South Carolina, Earle E. Morris, Jr., Comptroller General of the State of South Carolina, Rembert C. Dennis, Chairman of the Finance Committee of the South Carolina Senate, and

Tom G. Mangum, Chairman of the Ways and Means Committee of the South Carolina House of Representatives, as ex officio members of the State Budget and Control Board, Defendants. (two cases)

(278 S. E. (2d) 612)

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Frank K. Sloan,* and *Senior Asst. Atty. Gen. Karen L. Henderson,* Columbia, *for plaintiff.*

*M. William Youngblood,* of *Sinkler, Gibbs & Simons,* Charleston, and *John W. Foster,* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for defendants.*

*Kathleen E. Crum,* of *McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble,* Columbia, *amicus curiae* for *International Council of Shopping Centers.*

*W. Francis Marion* and *Joseph J. Blake, Jr.,* both of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *amicus curiae* for *Greater Greenville Chamber of Commerce* and *Spartanburg Area Chamber of Commerce.*

May 20, 1981.

*Per Curiam:*

These actions are brought in the original jurisdiction of this Court under the Uniform Declaratory Judgments Act, Sections 15-53-10 *et seq.,* Code of Laws of South Carolina (1976) by the State of South Carolina on the relation of the Attorney General in order to determine the constitutionality of certain bond authorizations.

The first action challenges Section 6 of Act 518 of 1980, to the extent that it authorizes the issuance of State capital improvement bonds, the proceeds of which will be used to promote an alcohol fuel development program. This provision is alleged to be in violation of Article X, Sections 11 and 13(3) and Article I, Section 8 of the South Carolina Constitution. The second action challenges Section 10 of Act 518 of 1980, to the extent that it authorizes the issuance of industrial revenue bonds, the proceeds of which will

be used to provide for computer and office facilities for entities which are not industrial or manufacturing enterprises and to provide for commercial shopping centers. This provision is alleged to be in violation of Article I, Section 3 of the South Carolina Constitution. In addition, the actions seek to enjoin further implementations of the legislation. Named as defendants are the various *ex officio* members of the State Budget and Control Board.[1]

In resolving these issues we are mindful of several principles of law which are fundamental to proper adjudication of constitutional challenges to statutory enactments. As restated by *Bauer v. South Carolina State Housing Authority,* 271 S. C. 219, 226, 246 S. E. (2d) 869 (1978).

" 'Our Constitution is not a grant of power, but a limitation on what, absent limitations therein, would be a plenary power in the people or their elected representatives. Accordingly, it is not sufficient for us to find that an act is offensive to what may be prevailing notions of the proper sphere for state governments. It is necessary, in order for us to strike down an act of the General Assembly to find that it offends specific provisions of the state constitution which have limited and circumscribed legislative action in that area.' *Elliott v. McNair,* 250 S. C. 75, 84, 156 S. E. (2d) 421, 426 (1967); accord *Anderson v. Baehr,* 265 S. C. 153, 217 S. E. (2d) 43 (1975), and *Duke Power Co. v. Bell,* 156 S. C. 299, 152 S. E. 865 (1930). 'This Court has repeatedly held that all reasonable doubt must be resolved in favor of the constitutionality of the act. If a constitutional construction of a statute is possible, that construction should be followed in lieu of an unconstitutional construction.' *Casey v. S. C. State Housing Authority, supra,* 264 S. C. at 312-3, 215 S. E. (2d) at 187."

---

[1] By order of this Court dated October 22, 1980, the actions were allowed to be heard together in all particulars since they involve questions that pertain to the issuance of general obligation bonds or revenue bonds by the State or its political subdivisions.

We note, too, that all legislative action must serve a public rather than a private purpose. Whether an act does indeed serve a public purpose is primarily a question for the legislature to determine and this Court will not interfere unless the legislative determination is clearly wrong. *Elliott v. McNair,* 250 S. C. 75, 156 S. E. (2d) 421 (1967); *Bauer v. South Carolina State Housing Authority, supra.*

## I

Section 6 of Act 518 of 1980 authorizes the issuance of general obligation bonds in the amount of $5,000,000 in order to finance an "alcohol fuel development loan program".[2]

The Budget and Control Board is given authority to use $3,000,000 of the funds to purchase up to ninety percent of loans made by banking institutions to any individual or corporation for the purpose of producing fuel components or constructing facilities to produce fuel grade alcohol.

The plaintiff argues that this provision violates Section 11 and 13(3) of the State Constitution. Section 11 provides in part that: "The credit of neither the State nor any of its political subdivisions shall be pledged or loaned for the benefit of any individual, company, association, corporation . . ." Section 13(3) provides, *inter alia,* that: "General obligation debt may not be incurred except for a public purpose . . ."

The plaintiff contends that any benefit to the public arising out of the private loan program of Act 518, Section 6 is indirect and speculative at best. The primary beneficiary of the legislation is the private developer who will profit if the program succeeds. The plaintiff also points out that if the loan program fails, the State must ultimately pay for the venture since the public credit is pledged.

---

[2] The Budget and Control Board approved a resolution making provisions for the implementation of the Alcohol Fuel Development Loan Program on October 14, 1980.

The defendants maintain that Section 6 serves a public purpose by supporting an alternative energy source. The General Assembly found that the enactment, "will subserve a public purpose by promoting the planting of grain crops and the development of a substitute for gasoline." The defendants take the position that the "public purpose" as so found is sufficient to weather the constitutional challenge.

While we would agree that the provision envisions some benefit to the public, we do not agree that the indirect and speculative nature of the proposed benefit is sufficient to pass constitutional muster. Section 11 of Article X now proscribes the pledging or loaning of public credit to benefit private enterprises without regard to incidental public benefit but this Court has long held the view in construing related provisions that general obligation bonds may not be issued for the primary benefit of private parties. Thus, *Jacobs v. McClain,* 262 S. C. 425, 429, 205 S. E. (2d) 172 (1974), quotes *Feldman & Co. v. City Council of Charleston,* 23 S. C. 57 (1884) for the proposition that:

"However certain and great the resulting good to the general public, it does not, by reason of its comparative importance, cease to be incidental. The incidental advantage to the public, or to the State, which results from the promotion of private interests, and the prosperity of private enterprises or business, does not justify their aid by the use of public money raised by taxation, or for which taxation may become necessary."

The private loan guarantee portion of Act 518, Section 6 clearly runs afoul of Sections 11 and 13(3) of Article X of the State Constitution.

Act 518, Section 6 also states:

*"Provided,* that not less than two million dollars authorized above for the Alcohol Fuel Development Loan Program shall be available for the development of

alcohol fuel production facilities by South Carolina municipalities and counties and by agencies and institutions of the South Carolina state government."

While we are not prepared to state that a properly tailored legislative enactment seeking to promote the development of fuel alcohol by government entities never serves a public purpose, we nonetheless conclude that this provision must fall since it is not severable from the remainder of the section. The language in the provision holds forth the possibility that the governmental entity might apply these monies to private ventures, a condtion violative of Article X, Section 11.

Even if the paragraph were allowed to stand alone, it would violate the constitutional provision for separation of legislative, executive and judicial powers at Article I, Section 8. The attempted delegation of legislative power to the Budget and Control Board here reposes an undefined discretion in the Board to set the direction and scope of the governmental loan program. Standing alone, the language in this portion of the act fails to state those primary standards necessary to accomplishing the stated purpose of the section. *South Carolina State Highway Department v. Harbin*, 226 S. C. 585, 86 S. E. (2d) 466 (1955).

## II

Section 10 of Act 518 of 1980 revises the Industrial Revenue Bond Act [Codified at Sec. 4-29-10, *et seq.,* Code of Laws of South Carolina (1976)]. Among the amendments enacted, two are challenged in the second action. The first amendment challenged would allow the issuance of industrial revenue bonds to finance computer and office facilities for entities which are not industrial or manufacturing enterprises if at least one hundred full-time employees are employed within one year of completion of the project. The second amendment which is challenged would allow the issuance of industrial revenue bonds to finance commercial shopping centers which would be leased by the developer

to at least two merchants employing at least sixty full-time employees upon completion of the project.

Indebtedness payable only from a revenue-producing project or from a special source is specifically provided for in the South Carolina Constitution at Article X, Sec. 14, Subsection (10) which states in part: "Indebtedness payable solely from a revenue-producing project or from a special source, which does not involve revenues from any tax or license, may be issued upon such terms and conditions as the General Assembly may prescribe by general law. . . ."

Section 10 of Act 518 does not pledge the public credit or in any manner create future debt liability for the political subdivisions involved. The revenue bond is repaid by revenues from the project financed. The purpose in using the political entity is not security, as would be the case if general obligation bonds were attempted to be used, but is mainly to realize tax savings which result from properly authorized local bond issues. *See,* Section 103 of the U. S. Internal Revenue Code of 1975 (26 U. S. C. Sec. 103).

However, Article I, Section 3 of the State Constitution has been interpreted to require that all legislation, including that authorizing the issuance of revenue bonds, serve a public as opposed to a private purpose. *Elliott v. McNair, supra; Bauer v. S. C. State Housing Authority, supra.* Public purpose is defined in *Anderson v. Baehr,* 265 S. C. 153, 162, 217 S. E. (2d) 43 (1975):

"As a general rule, a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents, or at least a substantial part thereof. Legislation does not have to benefit all of the people in order to serve a public purpose merely because some individual makes a profit as a result of the enactment."

To fulfill a public purpose, the undertaking must bring about more than a remote or indirect public benefit. *Id.,* at

163. Hence, projects which would primarily benefit the developer with no assurance of more than negligible advantage to the general public do not serve a public purpose within the meaning of the Constitution. *Id.*

The public purpose has been held to be served by legislation authorizing the issuance of revenue bonds for acquisition, ownership, leasing and disposition of properties to be used for the attraction of industry to the State, *Elliott v. McNair, supra;* financing pollution control facilities to be used by industry, *Harper v. Schooler,* 258 S. C. 486, 189 S. E. (2d) 284 (1972); and providing various programs to alleviate the shortage of sanitary, safe and affordable housing. *Bauer v. S. C. State Housing Authority, supra.* The public purpose was held not to be served by legislation authorizing the use of revenue bonds to provide funds allowing a city to join with a private developer in clearing slum property and replacing it with private businesses. *Anderson v. Baehr, supra.*

Unlike, *Elliott, Harper* and *Bauer, supra,* where the funds for revenue bonds were used to alleviate the pervasive problems of lack of industry and unemployment, pollution, and inadequate housing, the funds here would solve no problems confronted by substantial numbers of the public. The number of jobs provided will be miniscule in comparison to the massive industrialization envisioned in *Elliott, supra.* Although some new services may be offered, construction of shopping centers and offices often means relocation of already existing businesses or importation of national chains to provide services already provided locally.

As rejected in *Anderson v. Baehr, supra,* 265 S. C. at 163, the Act undertakes to permit local governments "to effectually promote undertakings to compete in free enterprise with other businesses which do not have the advantage which the Act would give." While the benefits to the developer of a shopping center or a business seeking office space would be substantial, the benefit to the public would be negligible

and speculative. *Id.* Such remote and indirect public benefit does not bring the undertakings authorized by the Act within the ambit of "public purpose."

We are mindful of the rule, "that courts cannot interfere with what the General Assembly has declared to be a public purpose and thus a function of government unless the judicial mind conceives that the legislative determination is without reasonable relation to the public interest or welfare and is beyond the scope of legitimate government." *Elliott v. McNair, supra,* 250 S. C. at 88, 156 S. E. (2d) 421. We are further cognizant of the findings of the General Assembly that Section 10 of Act 518 serves public purposes. While these findings are entitled to great weight, they have no magical quality to make valid that which is invalid. *Bauer v. S. C. State Housing Authority, supra,* 271 S. C. at 229, 246 S. E. (2d) 869.

Therefore, we hold Section 6 and Section 10 of Act 518 of 1980 in the challenged particulars unconstitutional.

HARWELL, J., concurs and dissents.

HARWELL, Justice (concurring in part and dissenting in part):

My original majority opinion became a minority opinion when my brethren on the Court failed to join Part II of my opinion which addressed that legislation which authorizes the issuance of industrial revenue bonds for certain purposes. While I join Part I of the majority opinion, I respectfully dissent to Part II and hereafter submit the relevant portion of my original opinion, with certain modifications, as my dissentng opinion.

## II

Section 10 of Act 518 of 1980 revises the Industrial Revenue Bond Act (Codified at §§ 4-29-10, *et seq.,* Code of Laws of South Carolina (1976)). Among the amendments enacted, two are challenged in the second action. The first amendment challenged would allow the issuance of industrial

revenue bonds to finance computer and office facilities for entities which are not industrial or manufacturing enterprises if at least one hundred full-time employees are employed within one year of completion of the project. The second amendment which is challenged would allow the issuance of industrial revenue bonds to finance commercial shopping centers which would be leased by the developer to at least two merchants employing at least sixty full-time employees upon completion of the project.

The analysis here substantially differs from that used in resolving the first action. The legislation there in substantial part sought to use general obligation bonds to finance a program whose primary beneficiaries were private parties who acquired loans to develop fuel alcohol. In that situation the constitution specifically prohibits the use of public credit for the benefit of the individual or corporation despite incidental public benefit which may result from ultimate success of the program.

Section 10, however, does not pledge the public credit or in any manner create future debt liability for the political subdivisions involved. The revenue bond is repaid by revenues from the project financed. The purpose in using the political entity is not security, as would be the case if general obligation bonds were attempted to be used, but rather is mainly to realize tax savings which result from properly authorized local bond issues. See, Section 103 of the U. S. Internal Revenue Code of 1954 (26 U. S. C. § 103).

Indebtedness payable only from revenue-producing project or from a special source is specifically provided for in the South Carolina Constitution at Article X, Section 14, Subsection (10) which states in part: "Indebtedness payable solely from a revenue-producing project or from a special source, which does not involve revenues from any tax or license, may be issued upon such terms and conditions as the General Assembly may prescribe by general law. . . ." Even this financing device, however, must serve a "public

purpose". Though those words are not actually used in the provision, the Court has previously noted the applicability of that precept to all legislative action. *Elliott v. McNair,* 250 S. C. 75, 156 S. E. (2d) 421 (1967) ; *Bauer v. South Carolina State Housing Authority,* 271 S. C. 219, 246 S. E. (2d) 869 (1978).

While a revenue bond law must serve a public purpose, it must be remembered that the reason for revenue bonds in the first place is to aid the individual or corporation in financing a project perceived to entail fundamental benefit to the community. Thus, unlike the situation where general obligation bonds are used, revenue bonding which admittedly aids an individual, company, association or corporation is not necessarily prohibited. Since the political subdivision has no financial liability for the revenue bonds the only issue to be resolved is whether the applicable revenue bond legislation serves a legitimate public purpose, despite the admitted benefit to private parties which this sort of financing allows.

"Public purpose" is not easily defined. It is a fluid concept which changes with time, place, population, economy and countless other circumstances. *Caldwell v. McMillan,* 224 S. C. 150, 77 S. E. (2d) 798 (1953). It reflects the changing needs of society. *Bauer v. South Carolina State Housing Authority, supra. Anderson v. Baehr,* 265 S. C. 153, 217 S. E. (2d) 43 (1975) states:

"As a general rule a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity and contentment of all the inhabitants or residents, or at least a substantial part thereof. Legislation does not have to benefit all of the people in order to serve a public purpose. At the same time legislation is not for a private purpose as contrasted with a public profit as a result of the enactment." 217 S. E. (2d) at 47.

A relevant and timely legislative enactment directed toward some perceived public purpose is a matter within the sound

discretion of the legislature. This Court should not interfere absent a showing of clear wrong.

Revenue bond legislation is no longer a novel device. This Court has, in fact, on several occasions in recent years passed upon the constitutionality of various legislative plans. *Elliott v. McNair,* 250 S. C. 75, 156 S. E. (2d) 421 (1967) (Industrial Revenue Bond Act as originally enacted found constitutional) ; *Harper v. Schooler,* 258 S. C. 486, 189 S. E. (2d) 284 (1972) (Revenue bond law to finance pollution control facilities to be used by industry found constitutional) ; *Bauer v. South Carolina State Housing Authority,* 271 S. C. 219, 246 S. E. (2d) 869 (1978) (Legislation authorizing the Housing Authority to issue notes and bonds with the proceeds to be used in a variety of programs to alleviate a shortage of sanitary, safe and affordable housing is upheld.) In each of these cases, key determinations were made that the public credit was in no way pledged and that the legislative declarations of public purpose were not clearly erroneous.

Among the recent cases cited to us, in only *Anderson v. Baehr,* 265 S. C. 153, 217 S. E. (2d) 43 (1975), has a revenue bond plan been struck down. The plan there involved using the bonds to finance slum clearance and municipal redevelopment projects. Significantly, there was no legislative finding of public purpose. The public benefit was accordingly found to be merely incidental. Despite the fact that the public credit was not pledged, this Court found the legislation repugnant since, "it permits the city to join hands with a developer and undertake projects which would be primarily to the benefit of the developer, with no assurance of more than negligible advantage to the general public." 217 S. E. (2d) at 48.

The plaintiff argues that the challenged portions of Section 10 of Act 518 amending the Industrial Revenue Bond Act could not have been contemplated by our decision in *Elliott v. McNair, supra,* which upheld the original act. The plaintiff contends that these portions of Section 10 do not

serve a constitutionally adequate public purpose pursuant to Article I, Section 3 of the Constitution. The legislation at issue, especially with regard to the portion treating shopping centers, is alleged to be transparently similar in purpose to that in *Anderson v. Baehr, supra,* and plaintiff urges that authority as a primary basis for the decision here.

The defendants, as well as the *amicus curiae* [1], urge recognition of the allegedly broad statements in *Elliott v. McNair, supra,* for the proposition that the earlier decision in essence contemplated and approved the scope of the 1980 changes. The Court is encouraged to recognize that the amendments do not represent change or addition to the law as much as they do clarification of terms in a legislative plan already declared constitutional.

A delineation of the parameters of *Elliott v. McNair* need not be attempted. The Court should recognize the changing nature of public needs and public purpose and the prerogative of the legislature to formulate legislation relevant to changed circumstances. The statutory changes at issue must stand or fall according to the weight of the legislative findings and the likelihood that the statutory mechanism enacted will contribute towards fulfilling the public purpose as so found.

The following findings were made in support of the Section 10 statutory changes at issue:

"(6) In order to further assist the counties of this State in inducing industries to finance new enterprises or expand existing enterprises, it is deemed desirable to clarify the definition of project.

"(7) In addition to clarifying the definition of the term 'project' it is also deemed desirable to expand the definition of project to include certain activities which would be beneficial to this State and eliminate certain activities which do not further the goal of industrial development. It is the pur-

---

[1] Amicus curiae briefs were submitted by: (1) The Greater Greenville Chamber of Commerce and Spartanburg Area Chamber of Commerce, and (2) The International Council of Shopping Centers.

pose of the Industrial Development Bond Act to induce, encourage, and foster investment which is in the public interest. While we have hitherto in this State only aided in the development of industrial activities by assisting enterprises directly involved in the handling of goods, it is recognized that such industries require supporting facilities such as office building and computer facilities to aid in the commercial as well as industrial development of this State. To that end, it has been found and determined that investment in this State in computer and office facilities with significant employment impact is in the public interest and should be encouraged. It has also been found and determined that the minimum employment impact in such industries necessary to keep the Industrial Development Bond Act from being used not for inducement or encouragement but rather as a substitute for other sources of financing is one hundred persons.

"(8) The intent in the following restatement is not to replace but rather to add to existing law. . . .

"(9) It is also found and determined that an addition to the definition of term of project for certain commercial shopping centers would aid in the commercial development of this State in such a way as to benefit the residents of this State. It has been found that the kind of aid or encouragement provided hereunder may be necessary to foster the development of such shopping facilities in the less urban areas of this State. It is also found that the development of such facilities is in the public interest and the public benefit because of the enhanced commercial activity providing employment and by the provision of centrally located facilities which may serve more than one community thereby diminishing travel costs and conserving energy. It is intended by such expansion to permit the governing body of a county or incorporated municipality, subject to the approval of the State Budget and Control Board, to determine that aid or encouragement to a particular shopping center will be in the public interest. It has also been found and determined that the

minimum level of employment which will assure that such shopping center will serve and promote the interest set forth above is sixty full-time employees. It has been found and determined that this number of employees will permit such developments in the less urban areas of this State as well as provide some safeguard against the utilization of the Industrial Development Bond Act not for inducement or encouragement but rather as a substitute for other sources of financing for the development of what is principally a facility for only one or two stores."

The plaintiff's argument that these findings and qualifications are not fully enunciated in the re-worded code provisions (at Section 4-29-10) is answered by pointing out that any project must be approved by both the political subdivision and the Budget and Control Board. Both of these bodies must affirmatively find that any proposed project will promote the purposes of the act.

By the terms of the Industrial Revenue Bond Act as originally enacted we approved a statutory plan, "through which the industrial development of the state will be promoted, and trade developed by inducing manufacturing, and other commercial enterprises to locate in and remain in the state. . . ." *Elliott v. McNair, supra,* at p. 427. The revised Act before us seeks to further these aims by explicitly addressing a broader scope of State economic needs. Only projects which quicken the overall pulse of local commercial activity, rather than merely displace established activity, would serve a valid public purpose, assuming such projects were otherwise qualified under the terms of the act. Only projects meeting the employment limitations may be considered. These limitations of one hundred employees for the office and computer faclities and sixty employees for shopping centers are designed to assure the public benefit resulting from the new enterprise will be significant. These figures appear to be reasonably related to the legislative end sought but are, of course, possessed of no innate magical qualities in themselves.

I am again mindful of the rule, "that courts cannot interfere with what the General Assembly has declared to be a public purpose and thus a function of government unless the judicial mind conceives that the legislative determination is without reasonable relation to the public interest or welfare and is beyond the scope of legitimate government." *Elliott v. Mc-Nair, supra,* at p. 428. I am not prepared to draw the line of logic between industrial and manufacturing enterprises and non-manufacturing and retail enterprises, thereby to conclude that only aid to the former serves to foster the economic well-being of the State. I would hold that Section 10 of Act 518 serves a valid public purpose and that the legislative criteria formulated are reasonably related to enhancing the State's commercial activity.

While revenue bond funding for non-manufacturing office and computer facilities and for shopping centers is not *per se* invalid, each such project must clearly demonstrate that it serves a public purpose and that any private benefit is incidental to the overall public benefit.

On October 14, 1980, the Budget and Control Board passed resolutions approving a Charleston County plan to issue up to $750,000 in revenue bonds for an office building and approving, on a provisional basis, a City of Lancaster plan to issue up to $10,000,000 in revenue bonds for a shopping center complex. I do not believe that either of these has been shown not to serve the enunciated public purposes. The relief sought in the second action should therefore be denied and Section 10 should be declared constitutional.