22082

C. Carter BYRD, Willis Randall Hanna, Mary Alma Langston, individually and on behalf of all other persons similarly situated, Appellants, v. COUNTY OF FLORENCE, South Carolina, a body politic and corporate; Herbert G. Ham, Lenwood O. Lamb, Raymond L. Poston, Vandroth Backus, J. Theodore Vause, Jr., Allard C. Allen, James Harwell, Jerry M. Keith, and John J. Powers, Jr., as Chairman, Vice-Chairman and members of the County Council of Florence County; Joann Welch, as Clerk of Council for County Council of Florence County; Miller L. Love, as County Administrator for Florence County; Karl Gene Smith, as County Treasurer for Florence County; and L. R. Waddell, as County Auditor for Florence County; Allen Lewis, Stewart Heath, W. R. Beddingfield, Andrew J. Kinder, Eralphia Edwards, Joe King, C. J. Turner, Marion Swink, Russell Culberson, as Chairman, Vice-Chairman and members of the Florence County Industrial Development Commission; Gary E. McLaren, as Executive Director of the Florence County Industrial Development Commission, Respondents.

(315 S. E. (2d) 804)

Supreme Court

*Bridges, Bridges & Orr,* Florence, *for appellants.*

*McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble,* Columbia, and *Hyman, Morgan, Brown, Jeffords, Rushton & Fallon,* Florence, *for respondents.*

April 10, 1984.

LITTLEJOHN, Justice:

Plaintiffs-Appellants, Byrd, Hanna, and Langston, challenge the constitutionality of Florence County Ordinance No. 14-82-83, which authorizes the issuance of

general obligation bonds for the acquisition and development of an industrial park. The trial court upheld the constitutionality of this ordinance. We disagree and reverse.

By the passage of this ordinance, County Council seeks to borrow $5,500,000 by way of general obligation bonds to be repaid over a period of years from proceeds derived from *ad valorem* taxes imposed on Florence County property owners. The proceeds would be used to acquire approximately five hundred acres of land located on the western edge of the county, to improve it, and offer it for sale or lease to private parties for industrial use. The proceeds of the sales and/or leases within the proposed industrial park might be reinvested for expansion, etc.

Under Article X Section 14(4) of the Constitution of this State, "... general obligation debt may be incurred only for a purpose which is a public purpose and which is a corporate purpose of the applicable political subdivision."

The basic question which this Court must determine is whether there is involved a public or corporate purpose within the meaning of the constitution. Public purpose is not easily defined. It is oftentimes stated that a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents, or at least a substantial part thereof. In *Anderson v. Baehr*, 256 S. C. 153, 217 S. E. (2d) 43 (1975), we said:

> The courts have, as a rule, been reluctant to attempt to define public purpose as contrasted with a private purpose, but have generally left each case to be determined on its own peculiar circumstances.

This Court has generally approved what we refer to as "individual revenue bonds", which involve not taxing power of the issuing authority, but repayment of the debt solely from revenues to be derived from the project created by use of the monies borrowed. *Elliott v. McNair*, 250 S. C. 75, 156 S. E. (2d) 421 (1967); *Harper v. Schooler*, 258 S. C. 486, 189 S. E. (2d) 284 (1972); *Bauer v. S. C. State Housing Authority*, 271 S. C. 219, 246 S. E. (2d) 869 (1978).

No case has come to our attention wherein this Court approved levy of *ad valorem* tax to repay a debt created for the purpose of industrial development. All bonds, whether gen-

eral obligation or revenue, must meet the demands of the constitution that a public purpose be served. All legislation must serve a public purpose. In the dissenting opinion of Justice Harwell, in the case of *State, ex. rel. McLeod v. Riley,* 276 S. C. 323, 278 S. E. (2d) 612, 617 (1981), it was pointed out that a distinction may be made (in determining public purpose) between the issuance of general obligation bonds and revenue bonds. If this Court in its reluctance to define public purpose is to consider the "peculiar circumstances" is indicated in *Anderson,* one of the relevant and logical considerations is the source of repayment. A distinction is justified. In revenue bonds, taxpayers can not lose. In general obligation bonds, taxpayers may lose much.

In order to sanction the ordinance under attack, the ■ trial court liberally construed Article X Section 14 of our Constitution and Section 4-9-30 of the *Code of Laws of South Carolina* (1976), and Section 11-27-40 (Cum. Supp. 1982). The power of county council is not plenary. It is constitutionally limited to borrowing money for a clearly demonstrated nonspeculative public purpose.

It is inescapable that the primary beneficiaries of the ■ proposed development would be private parties. The industrial park is not clearly defined. No purchaser or tenant has been identified. County Council hopes that the industrial park will attract purchasers and tenants; it hopes that they will employ county residents; it surmises that the public will benefit. In holding that no approximate public purpose would be served by the issuance of bonds in a somewhat similar situation, this Court stated in *State, ex. rel. McLeod v. Riley,* supra, the following:

> While we would agree that the provision envisions some benefit to the public, we do not agree that the indirect and speculative nature of the proposed benefit is sufficient to pass constitutional muster. Section 11 of Article X now proscribes the pledging or loaning of public credit to benefit private enterprises without regard to incidental public benefit but this Court has long held the view in construing related provisions that general obligation bonds may not be issued for the primary benefit of private parties. Thus, *Jacobs v. McClain,* 262 S. C. 425, 429, 205 S. E. (2d) 172 (1974), quotes *Feldman & Co. v. City*

*Council of Charleston*, 23 S. C. 57 (1884) for the proposition that:

"However certain and great the resulting good to the general public, it does not, by reason of its comparative importance, cease to be incidental. The incidental advantage to the public, or to the State, which results from the promotion of private interests, and the prosperity of private enterprises or business, does not justify their aid by the use of public money raised by taxation, or for which taxation may become necessary."

A somewhat similar speculative project was involved in the case of *Anderson v. Baehr, supra.* The Court determined that no proper public purpose was involved. The City of Spartanburg proposed to acquire land in a slum or blighted area. It hoped to procure a developer interested in improving the property, who would covenant to erect, operate and maintain their own buildings or other facilities or improvements. The City would lease the land to the developer and provide the necessary capital for the buildings through the issuance of revenue bonds. This Court held that no public purpose was involved, even though the taxing power of the City was not pledged or involved.

The observations of Chief Justice Moss in that case are equally applicable here:

Slum clearance by condemnation is, of course, permitted, but the question of public purpose must be considered in the light of not only the authority of the city to condemn slum and blighted areas, but in the light of the use the city would make of the property. In *McNulty v. Owens*, 188 S. C. 377, 199 S. E. 425 (1938), the public purpose approved was the elimination of slums and the provision of improved living conditions for many displaced people. The profit motif was merely incidental and resulted from the fact that obviously free enterprise would build the houses. Here, the situation is grossly different. The Act undertakes to permit the city to effectually promote business undertakings to compete in free enterprise with other businesses which do not have the advantage which the Act would give. We think it a fair conclusion to say that benefit to the developer or

entrepreneur, would be substantial, and the benefit to the public would be negligible and speculative.

*Elliott v. McNair, supra,* relied on by respondent, is of interest but not controlling. There are many bond issues which clearly involve a public purpose; there are many proposed bond issues which clearly do not involve a public purpose; there are many borderline cases. *Elliott* was barely above the border; the case now before us is barely, if not greatly, below the border. In *Elliott,* much weight was given to the presumption of constitutionality and to the fact that the taxing power of the governmental entity was not involved. In *Elliott,* there was no taxpayer liability. In the case now before us, there is total liability.

The Court should first determine the ultimate goal or benefit to the public intended by the project. Second, the Court should analyze whether public or private parties will be the primary beneficiaries. Third, the speculative nature of the project must be considered. Fourth, the Court must analyze and balance the probability that the public interest will be ultimately served and to what degree.

The parties to this action have stipulated that, "[t]o date, the industries to be located in the park are unknown and indefinite, and no commitments or contracts by any industry to locate within the park have been made." Thus, the speculative nature of the project must be rated as high.

The primary beneficiaries, if any, of this project would be private businesses. They would be spared analysis cost, costs of roads, sewer, water and electricity facilities. Their benefits are great and certain. The benefits to the taxpayers are highly speculative at best.

We hold that Florence County Ordinance Number 14-82-83 is unconstitutional in that it is violative of Article X Section 14 in failing to meet the test for a valid public purpose. It follows that judgment shall be entered in favor of Plaintiffs-Appellants.

Reversed.

LEWIS, C. J., and JOSEPH R. MOSS, Acting Associate Justice, concur.

NESS, Justice (dissenting):

The majority surprisingly holds that the adoption of Florence County Ordinance #14-82-83 is unconstitutional because it is not for a valid public purpose. This holding is contrary to this Court's prior decisions, thus I disagree and would affirm.

The majority is correct in that the validity of this Ordinance hinges solely on the issue of public purpose. The majority, however, is in error in relating the issue of public purpose to taxpayer liability and further, in refusing to apply the clear rule established in *Elliott v. McNair*, 250 S. C. 75, 156 S. E. (2d) 421 (1967). The majority's attempt to circumvent and distinguish *Elliott* is not persuasive.

Industrial development in this state as concluded in *Elliott v. McNair*, is valid public purpose for the issuance of bonds by a political subdivision. The public purpose issue here is *identical* to that same issue decided in *Elliott* and, *further*, is *identical* to the public purpose served continuously by the South Carolina Development Board.

The majority finds that the public benefits to be derived from the instant bond issuance are speculative and that private industry, not the public, will be the primary beneficiaries. I disagree.

The record is replete with uncontradicted facts establishing that Florence County is greatly in need of major economic development. There are nearly 6,000 unemployed people in Florence County, and the Pee Dee region of the state is experiencing a 13.7% unemployment rate, while the state overall is 10.9%. Florence County's ranking in per capita income in the state dropped from 9th in 1974 to 19th in 1980, and the increase in the number of manufacturing jobs over the past four years amounts to a mere 18. In the past 10 years, Florence County has managed to locate only three new industries that employ 100 or more people.

The use of the proceeds from these bonds as provided by the County Council will be used by Florence County to purchase a tract of land and install utilities, water, sewer, electricity, roadways and railways therein. In turn, the property of the Industrial Park "will be sold to industry at a cost that will cover the County's investment," including the cost of improvements. I disagree with the majority's conclusion that private businesses will be spared analysis costs, costs of roads, sewer, water and electricity facilities. (Tr. p. 95).

Based upon the experience of other industrial parks in South Carolina and other states, this investment will pay for itself many times in terms of tax dollars collected, jobs created and additional wealth pumped into the local economy by manufacturing payrolls. (Tr. p. 74). Moreover, the record reveals "two industries are currently considering the Florence area only because of the site offered by the proposed project. These two firms would represent over 750 jobs. These jobs are not a possibility unless the facility is developed." (Tr. p. 95).

If the benefits to the public here, such as the creation of jobs and the betterment of Florence County's economic standards, are so indirect so as to render this Ordinance unconstitutional, then the appropriation of monies by our General Assembly to fund the State Development Board for the purpose of encouraging and soliciting new industries to locate in South Carolina is likewise unconstitutional. I completely disagree with this analysis and holding by the majority.

The General Assembly has, for several decades, appropriated the state tax monies to the Development Board for the sole purpose of industrial development. The reasoning being that attraction of industry to the state will employ our labor force and utilize our natural resources which increases our tax bases and incomes and thereby improves the state's overall quality of living.

Under the Home Rule Act, § 4-9-30(5), Code of Laws of South Carolina (1976 as amended), the General Assembly has authorized the county governments to levy ad valorem taxes and make appropriations for economic development. Thus, Florence County Council could simply increase taxes to provide funding for this project. This is the method employed by our General Assembly in funding the State Development Board. On the other hand, the issuance of these proposed bonds will pass on all of the cost incurred in developing the industrial park to the industries located there so as to avoid any unnecessary increase in taxes to the County taxpayers. There is no difference in the degree of speculation involved in the bonds issuance as proposed by Florence County here and that of the General Assembly in appropriating monies to the State Development Board.

The opinion in *Elliott v. McNair, supra,* authored by Mr. Justice Moss, is conclusive.

There is no doubt of the fact that the economy of South Carolina has undergone a startling change in the last few years. The inhabitants of this state were for many years dependent almost entirely upon agriculture and related industries for their livelihood. Agriculture no longer provides the livelihood of those who only a few years ago were almost entirely supported by it. The Act here under consideration recites that South Carolina has promoted industrial expansion and has actively supported the State Development Board, for which public moneys have been appropriated and through [sic] it has endeavored to promote the industrial development of the state for the welfare of its inhabitants. *This has been done as a matter of state policy. It is the purpose of the Act to empower the governing bodies of the several counties* of the state, under the terms and conditions of this Act, to provide such assistance and to that end to acquire, *own, lease and dispose of properties, through which the industrial development of the state will be promoted,* and trade developed by inducing manufacturing, *and other commercial enterprises to locate in and remain in the state, and to utilize and employ the manpower, agricultural products and natural resources of the state.* 156 S. E. (2d) 421 at 427. (Emphasis added.)

There is no county in this State to which this holding is more applicable than Florence County. Once one of our leading agricultural counties, Florence is suffering from the loss of jobs just as this Court noted our entire state was in *Elliott v. McNair.* The issuance of bonds in the present case is for the "public purpose" as established in *Elliott v. McNair,* and is "merely an expansion of the established legislative policy of improving the industrial climate of South Carolina in order to provide for the welfare and prosperity of its inhabitants. . . ." 250 S. C. at 89, 156 S. E. (2d) 421.

If the acquisition of properties to promote industrial development in an area for the purpose of creating jobs and increasing the area's overall standard of living are so indirect as to render this Ordinance unconstitutional in failing to meet the test for a valid public purpose, then the work of the State Development Board likewise cannot be held to be for a public purpose.

I would hold the issuance of bonds as provided in Ordinance #14-82-83 for the industrial development of Florence County is for a valid public and corporate purpose as required by Article X, Section 14 of our Constitution. To hold otherwise flies squarely in the face of this Court's decision in *Elliott v. McNair* and our General Assembly's actions in funding our State Development Board. I see no alternative but to affirm and would affirm.

GREGORY, J., concurs.