20068

James A. ANDERSON, Individually and representing the residents and taxpayers of the City of Spartanburg, Appellant, v. John G. BAEHR, Jr., as Mayor, et al., Respondents.

(217 S. E. (2d) 43)

*Matthew A. Henderson, Esq.,* of Spartanburg, *for Appellant,* cites:

*Messrs. T. E. Walsh of Gaines & Walsh, Spartanburg, and Theodore B. Guerard of Sinkler, Gibbs, Simons & Guerard,* Charleston, *for Respondents,* cite:

July 21, 1975.

Moss, Chief Justice:

This action is one under the Uniform Declaratory Judgments Act, § 10-2001 *et seq.,* 1962 Code of Laws, commenced by the plaintiff, who is a resident and taxpayer in the city of Spartanburg, individually and in a representative capacity representing all other persons similarly situated. The defendants are the mayor and councilmen of the city of Spartanburg, and Daniel R. McLeod as Attorney General of the State of South Carolina.

The complaint, contesting the constitutionality of Act No. 1097 (referred to as Ratification No. R 1252) of the General Assembly of 1974, reads as follows:

"The Plaintiff alleges:

"1. The Plaintiff is a resident and taxpayer of the City of Spartanburg, South Carolina and brings this action individually and on behalf of the residents and taxpayers of the City of Spartanburg.

"2. The Defendant, John G. Baehr, Jr., is the duly elected and acting Mayor of the City of Spartanburg, the Defendants, C. Chester Brown, Jr., Jack M. Blasius, Ralph D. Prince, and Hal G. Warlick, Jr., are the duly elected and acting members of the City Council of Spartanburg, and the Defendant Daniel R. McLeod, the duly elected and acting Attorney General of South Carolina.

"3. At its 1974 Session, the South Carolina General Assembly enacted Act bearing ratification number R. 1252 entitled:

'An Act To Authorize The Incorporated Municipalities Of The State To Contract With Persons For The Construction, Operation And Maintenance Of Improvements To Land; To Authorize Incorporated Municipalities To Issue Revenue Bonds Payable Solely From Payments To Be Made By Such Persons; To Prescribe The Terms And Conditions Of Such Revenue Bonds, The Remedies Of Those Who May Acquire Them And The Terms And Conditions Under Which Such Revenue Bonds May Be Issued; To Authorize Incorporated Municipalities To Enter Into Loan Agreements With Respect To The Use Of The Proceeds Of Such Bonds And The Repayment Of The Bonds; To Provide That Such Bonds And Any Agreements Made In Connection Therewith Shall Not Constitute An Indebtedness Of Any Incorporated Municipality; To Provide The Purposes For Which The Proceeds From The Sale Of Such Bonds May Be Used And To Provide For Borrowing In Anticipation Of The Issuance Of Such Bonds And The Publication Of A Notice Of The Adoption Of Proceedings Providing For The Issuance Of Such Bonds And A Limited Time Within Which Such Action Can Be Contested.'

which was approved by the Governor of South Carolina on the 26th day of June, 1974; said Act bearing ratification number R. 1252 [Act 1097] is hereinafter referred to as the Bond Act.

"4. The Bond Act undertakes to empower any incorporated municipality in the State acting through its governing body (1) to enter into agreements with any person, firm or corporation providing for the construction, operation and maintenance of buildings or other facilities or improvements on any real estate located within the municipality which the governing body proposes to acquire from the proceeds of bonds to be issued pursuant to the Bond Act after making a determination that the acquisition of such land is necessary in connection with any slum clearance or redevelopment work (2) to enter into a loan agreement with any such person, firm or corporation by which such person, firm or corporation agrees to pay to the municipality the sums required to meet the payment of principal interest and redemption premium on any bonds issued pursuant to the Bond Act, (3) to issue bonds for the purpose of defraying the costs of acquiring such real estate payable solely out of monies to be derived pursuant to a loan agreement, (4) to lease the real estate acquired with bond proceeds to any person, firm or corporation which has entered into a loan agreement to repay such bonds and such lease may entitle such person, firm or corporation to purchase the real estate at a nominal amount, and (5) to convey the real estate acquired by the bond proceeds to a person, firm or corporation which agrees to repay the bonds issued pursuant to the Bond Act to acquire such real estate.

"5. The Plaintiff is advised and believes the Bond Act is unconstitutional in that (a) it provides for the use of public funds for a private purpose, to wit: the acquisition of real estate to be leased or conveyed to a private person, firm or corporation, in violation of the provisions of the South Carolina Constitution, including without limitation Article X, Section 6; and (b) the issuance of bonds for the

purposes authorized by the Bond Act would constitute a taking of Plaintiff's property without due process in violation of the Fourteenth Amendment of the United States Constitution.

"6. The Plaintiff is instituting this action individually and on behalf of all the residents and taxpayers of the City of Spartanburg pursuant to the provisions of the South Carolina Declaratory Judgment Acts (Section 10-2001 *et seq.* of the Code of Laws of South Carolina, 1962) in order to contest the constitutionality of the Bond Act.

"7. The Plaintiff is advised and believes that the Defendants Mayor and City Council now propose to exercise the authorizations of the Bond Act and issue bonds of the City of Spartanburg for the purpose of acquiring land within the City of Spartanburg for sale or lease to a private person, firm or corporation.

"*Wherefore,* Plaintiff prays that the Court take jurisdiction on this matter and, after a hearing, issue its Order:

(a) declaring the Bond Act unconstitutional,

(b) enjoining the Defendants, Mayor and Councilmen from issuing bonds pursuant to the Bond Act, and

(c) granting such other relief as may be just and equitable."

The factual allegations of the complaint are generally admitted by the mayor and the city councilmen. They deny, however, that the Act is unconstitutional. They specifically allege "that they propose to issue bonds pursuant to the Bond Act and use the proceeds to acquire a parcel of land in downtown Spartanburg for lease and sale to a 'developer' as such term is defined in the Bond Act." They pray that the court declare the Bond Act constitutional and issue its order authorizing them (the city) to issue bonds.

The Attorney General filed no answer, asserting that the issues were properly before the court on the pleadings of the other parties.

The matter was heard before the Honorable Wade S. Weatherford, Jr., Judge of the Seventh Judicial Circuit. He issued an order December 7, 1974, holding that the Act was constitutional and that it did not violate any provisions of the Constitution of the United States or of the State of South Carolina. He denied the prayer for an injunction and dismissed the complaint.

The plaintiff-taxpayer has filed seven exceptions, raising basically three issues for this Court. In our view it is not necessary to go beyond the first question:

"Does Act Bearing Ratification No. R-1252 [Act 1097] enacted at the 1974 Session of the South Carolina General Assembly (the Bond Act) violate the provisions of Section 6 of Article X, South Carolina Constitution, limiting the purposes for which the legislature may empower political subdivisions to issue bonds (Exception 1) ?"

We are called upon to determine whether the proposed action by the city of Spartanburg serves a proper public purpose. That action admittedly is as follows: The city would acquire land (presumably predominantly slum or blighted) by use of its condemnation authority, if necessary. It would procure a developer interested in improving the property, who would covenant to erect, operate, and maintain thereon buildings or other facilities or improvements not described in the record. The city would then enter into a loan agreement with the developer whereby the city would lease the land to the developer and the developer would agree to pay (and to secure if so required) sums necessary to meet the payment of principal, interest and redemption premium, if any, on bonds which the city would issue for the purpose of defraying the cost of acquiring the land and for the purpose of funding the development in keeping with the terms of a lease or loan agreement. The monies borrowed by the city through the issuance of bonds (and loan to the developer) would be repaid out of monies to be derived by the city from the developer pursuant to a loan and/or lease agreement. In keeping with the Bond Act, the bonds and interest coupons issued thereunder would not

be obligations of the city. It is a fair summarization to say that the overall plan contemplates and permits the developer to eventually own the property without profit or loss to the city.

As we approach the question, we keep in mind several propositions of law often repeated by this court. Our constitution is not a grant of power, but a limitation on what, absent limitations therein, should be a plenary power in the people or their elected representatives. Accordingly, it is not sufficient for us to find that an act is offensive to what may be prevailing notions of the proper sphere for state government. In order to strike down an act of the General Assembly, it is necessary that there be a finding that it offends the State Constitution which has limited and circumscribed legislative action in that area.

Even though the revenue bonds issued pursuant to the Bond Act are not general obligation bonds for which municipal taxes would be levied, nevertheless, they can be issued only if they are issued for a proper public purpose rather than a private purpose under Article X, § 6 of the State Constitution. In *Elliott v. McNair*, 250 S. C. 75, 156 S. E. (2d) 421 (1967), we approved the constitutionality of the Industrial Revenue Bond Act (No. 103 of 1967) and held that the increase of employment to result from new industrial enterprises was sufficient public purpose to justify the issuance of revenue bonds by the counties. In *Harper v. Schooler*, 258 S. C. 486, 189 S. E. (2d) 284 (1972), we sustained the constitutionality of the Pollution Control Facilities Revenue Bond Act (No. 156 of 1971) and held that the elimination, mitigation, or prevention of air or water pollution is a proper public purpose for which the cities and counties may be authorized to issue revenue bonds. We held that the restriction of Article X, § 6, did not prohibit the issuance of revenue bonds for the payment of which taxes could not be levied.

In both of these cases the legislature, which primarily determines public policy, found that the acts served a public

purpose. Such findings are absent here. Although legislative findings on the public purpose issue are not conclusive, they are entitled to weight. In neither of these cases was the right of eminent domain involved. Both involved somewhat borderline situations. We are of the opinion that the Act now before us falls on the wrong side of the border.

This Court held in *Edens v. City of Columbia,* 228 S. C. 563, 91 S. E. (2d) 280 (1956), that actions similar to that proposed by the city were clearly unconstitutional. Thereafter, in 1967, an amendment to the constitution was ratified giving to municipalities in Spartanburg County, only, certain powers. We must, of course, consider the case *sub judice* in the light of that amendment, which reads as follows:

"Article XIV, § 5. Slum Clearance and redevelopment; acquisition of air rights and subsurface rights.—*Provided,* the General Assembly may provide by law that any incorporated municipality in Spartanburg County, or any housing or redevelopment authority now existing or hereafter established to function in Spartanburg County, may undertake and carry out slum clearance and redevelopment work in areas which are predominantly slum or blighted, the preparation of such areas for reuse, and the sale or other disposition of such areas to private enterprise for private uses or to public bodies for public uses and to that end the General Assembly may delegate to such incorporated municipalities in Spartanburg County or to such authorities, the right to exercise the power of eminent domain as to any property essential to the plan of slum clearance and redevelopment."

The Bond Act here in contest applies to all municipalities in this State. We consider the matter in the light of the Spartanburg County Constitutional Amendment.

That which the city and/or a developer proposes to do specifically is not indicated in the record. Apparently the city plans, through condemnation if necessary, to improve a portion of downtown property by the construction and

maintenance of some type of business facilities typical of a downtown business area.

The statute is probably subject to attack as being overly broad, but we will dispose of the case on what we conceive to be the more important issue indicated hereinabove. Although the legislature has made no finding of public purpose, we will assume that it, by inference, concluded that a public purpose was involved because all legislation must serve a public purpose to stand the constitutional test. We will also assume that a slum or blighted area is involved. It seems to be agreed that the constitutional amendment, quoted hereinabove, and the Bond Act must be considered together in making a determination of whether or not a public purpose is served.

The courts have, as a rule, been reluctant to attempt to define public purpose as contrasted with a private purpose, but have generally left each case to be determined on its own peculiar circumstances. As a general rule a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents, or at least a substantial part thereof. Legislation does not have to benefit all of the people in order to serve a public purpose. At the same time legislation is not for a private purpose as contrasted with a public purpose merely because some individual makes a profit as a result of the enactment.

In addition to the fact that the legislature has not spelled out a public purpose, the answer of the city has not, except in a general way, plead a public purpose. In oral argument counsel for the city has asserted that the public purpose is "slum clearance and redevelopment." This is, of course, a generalization subject to many inferences.

Slum clearance by condemnation is, of course, permitted, but the question of public purpose must be considered in the light of not only the authority of the city to condemn slum and blighted areas, but in the light of the use the city would make of the property. In *McNulty*

*v. Owens,* 188 S. C. 377, 199 S. E. 425 (1938), the public purpose approved was the elimination of slums and the provision of improved living conditions for many displaced people. The profit motif was merely incidental and resulted from the fact that obviously free enterprise would build the houses. Here, the situation is grossly different. The Act undertakes to permit the city to effectually promote business undertakings to compete in free enterprise with other businesses which do not have the advantage which the Act would give. We think it a fair conclusion to say that benefit to the developer or entrepreneur, would be substantial, and the benefit to the public would be negligible and speculative.

Some public benefit comes from the development of any property by free enterprise or by the government. Many objects may be public or beneficial in the general sense that their attainment will benefit or promote the public convenience, but not be public in the sense that legislation is permitted, or in this case, bonds issued, to bring about the objects.

We have no doubt but that the city officials would exercise powers granted by the Act in good faith, but in considering the constitutionality of the Act, we must take into consideration the things which the Act affirmatively permits. In our view, it permits the city to join hands with a developer and undertake projects which would be primarily to the benefit of the developer, with no assurance of more than negligible advantage to the general public. It is not sufficient that an undertaking bring about a remote or indirect public benefit to categorize it as a project within the sphere of "public purpose."

The respondent has failed to convince this Court that the authority granted by the Act to the municipalities involves a public purpose as contrasted with a private purpose, and accordingly we hold the Act unconstitutional.

Reversed.

LITTLEJOHN and NESS, JJ., concur.

LEWIS, J., and BRAILSFORD, Acting Associate Justice, concur in result.