20757

Charlot M. KARESH, Individually and on behalf of all other taxpayers of the City of Charleston, South Carolina, John H. Bennett, Jr., Individually, Save Historic Charleston Fund, an unincorporated association, Elizabeth Verner Hamilton and Treville Lawrence, Sr., Individually and in their capacity for the Save Historic Charleston Fund, Frank Quale O'Neill, Charlestown Neighborhood Association, the Preservation Society of Charleston, Charleston Village Association, Nancy D. Hawk, Marie I. Smith, C. B. Prentiss, III, Moses Reznick, W. Maier Hyman, Leonard Karesh, *et al.,* Nancy E. Harrington, Olof S. Sandburg and Annette Sandburg, Appellants, v. CITY COUNCIL OF the CITY OF CHARLESTON, Respondent.

(247 S. E. (2d) 342)

340

*A. Arthur Rosenblum,* Charleston, *for appellant Karesh.*

*Guerard & Appelgate,* Charleston, *for appellants Charlestown Neighborhood Association, et al.*

*William L. Runyon, Jr.,* Charleston, *for appellants Bennett, Jr., et al.*

*Buist, Moore, Smythe & McGee,* Charleston, *for appellants Prentiss, III, et al.*

*William B. Regan,* and *Sinkler, Gibbs Simons,* Charleston, *for respondent.*

*Roy D. Bates,* Columbia, *amicus curiae for City of Columbia.*

*David F. Williams,* Columbia, *amicus curiae, for Municipal Association of S.C.*

August 31, 1978.

Ness, Justice:

This is an action for declaratory judgment and injunctive relief to prevent the City of Charleston from entering into a contract with a private developer to construct a convention center-hotel complex in downtown Charleston. The trial

judge held the City could proceed with the project. We reverse.

The City of Charleston proposes a joint undertaking with Holywell Corporation involving the city block bounded by Hasell, Meeting, Market and King Streets. Holywell would purchase the 93,500 square foot southern section of the block and construct a hotel, a major department store, and a restaurant thereon. The City proposes to acquire the remaining portions of the block (except lands owned by St. Mary's Church and one small adjoining portion) by purchase or condemnation, and permit Holywell to construct thereon a 500 car parking garage and a convention center.

To raise the funds for the acquisition of that portion of the project site to be owned by the City, it will use a $4.1 million Urban Development Action Grant and issue general obligation bonds. In order to pay for the costs of constructing the convention center and the parking facility, the City plans to issue and sell revenue bonds to the extent necessary. The revenue bonds will be payable from and secured solely by the revenue derived from the leasing of the convention center and parking garage to a limited partnership whose managing partner is a wholly owned subsidiary of the Holywell Corporation.

In designing the parking garage, the City undertakes to preserve as many as possible of the existing facades of architectural value on Market Street. Shallow buildings behind these facades will be leased to private entrepreneurs. Similarly, on King Street, the auditorium is to be constructed so that the street level will contain buildings for lease to retail establishments.

The critical issue in this case is whether the City of Charleston can condemn land and lease it to a private corporation for the construction of a parking facility and convention center containing rental commercial space. We believe it cannot.

In this State, the power of eminent domain is restricted to the taking of private property for "public use." Article 1, Section 13 of the South Carolina Constitution. While in other jurisdictions the power of eminent domain may be exercised for a public purpose, benefit or the public welfare, the courts of South Carolina have adhered to a strict interpretation of our constitutional provision. *Riley v. Charleston Union Station Co.*, 71 S. C. 457, 51 S. E. 485 (1904); *Bookhart v. Central Electric Power Co-operative, Inc.*, 219 S. C. 414, 65 S. E. (2d) 781 (1951). As stated in *Edens et al. v. City of Columbia et al.*, 228 S. C. 563, 571, 91 S. E. (2d) 280, 283 (1956):

"Our controlling decisions are to the effect that 'public use' means just that and private property cannot be taken except for public use, without the consent of the owner."

The restrictive view of the power of eminent domain expressed by the framers of our constitution and the courts of this State is indicative of a high regard for private property. As the Court stated in *Young et al. v. Wiggins et al.*, 240 S. C. 426, 435, 126 S. E. (2d) 360, 365 (1962):

" 'This exercise of the right of eminent domain is, in its nature, in derogation of the great and fundamental principle of all constitutional governments, which secures to every individual the right to acquire, possess, and defend property.' "

What constitutes a public use is ultimately a judicial question. *Edens et al. v. City of Columbia et al., supra* at 576, 91 S. E. (2d) 280. The term is an elastic one in order to keep abreast of changing social conditions, and presents a question of fact in each particular case. *Gasque v. Town of Conway, et al.*, 194 S. C. 15, 8 S. E. (2d) 871 (1940); *Timmons v. South Carolina Tricentennial Commission, et al.*, 254 S. C. 378, 175 S. E. (2d) 805 (1970).

Appellants assert that the City, by effecting the construction of the parking garage and convention center simultaneously with the hotel and retail facilities to be owned by Holywell, converts a public use to a private use. The trial court concluded the private rental units were merely incidental to the overall complex and did not destroy the public use concept of the parking garage and the convention center. We disagree.

We believe the proposed plan would allow the City to join hands with a developer and undertake a project primarily of benefit to the developer, with no assurance of more than negligible advantage to the general public. *Anderson, et al. v. Baehr, et al.*, 265 S. C. 153, 217 S. E. (2d) 43 (1975). Both the convention center and the parking garage, ostensibly public facilities, are to be leased to the private developer-owner of the hotel and operated as an adjunct to the hotel operation itself. The initial lease term would extend for forty years and be subject to two extensions at the option of the lessee for ten years each.

Both the convention center and parking garage will contain retail shops which will replace the existing retail stores in the area. The developer will sublet these new shops to new merchants, not to the land-owner merchants whose property the City proposes to condemn. We cannot constitutionally condone the eviction of the present property owners by virtue of the power of eminent domain in favor of other private shopkeepers.

Apart from the displacement of present shopkeepers with other occupants, we do not believe the proposed use of the city block would serve a public use. We are aware of decisions recognizing parking facilities as a public use for which property may be condemned. *City of Richmond v. Dervishian*, 190 Va. 398, 57 S. E. (2d) 120, 124 (1950); *Ermels v. Webster City*, 246 Iowa 1305, 71 N. W. (2d) 911 (1955); *Timmons v. S. C. Tricentennial Commission, supra.* However, in this case, Holywell, as a long-term les-

sor, would have full control over the convention center and parking garage. The only restriction on Holywell's use is a requirement that the garage "shall be made available on reasonable demand to all members of the general public," and that "no more than 10 percent of the space in the Parking Garage may at any one time be reserved for the exclusive use of patrons and employees of the Convention Center." (Tr. pp. 21-22).

The guarantee that the public will enjoy the use of the facilities, so necessary to the public use concept, is absent. The following language from *Riley v. Charleston Union Station Co., supra,* 71 S. C. at 486, 51 S. E. at 496, quoted approvingly in *Edens et al. v. City of Columbia et al., supra,* is illustrative of the requirement of a definite use by the public:

"These definitions involve the idea that the public must have a definite and fixed use of the property to be condemned, independent of the will of the person or corporation taking title under condemnation, and that such use by the public is protected by law."

Similarly in *Tuomey Hospital v. City of Sumter et al.,* 243 S. C. 544, 551, 134 S. E. (2d) 744, 747 (1964), the Court stated:

"Mere benefit to the public or permission by the owner for use of the property by the public are not enough to constitute a public use, but it must appear that the public has an enforceable right to a definite and fixed use of the property. 29 C. J. S., Eminent Domain, § 31; 18 Am. Jur. 720, § 94."

We conclude that the proposed undertaking by the City of Charleston and Holywell Corporation fails constitutionally because it envisions the utilization of the power of eminent domain for a taking of private property which will not be devoted to a public use. However attractive the proposed complex, however desirable the project from a municipal planning viewpoint, the use of the power of eminent domain

for such purposes runs squarely into the right of an individual to own property and use it as he pleases.

As an additional basis for sustaining the position of the City, the trial judge relied on Paragraph 10 of Section 14 of New Article X of the State Constitution which recognizes "redevelopment" as a proper corporate purpose. He concluded that redevelopment was thus a public use of property and that *Edens v. City of Columbia, supra,* was not controlling. The trial judge was in error.

Article X of the Constitution is concerned with finance and taxation. There is no mention in Article X of condemnation, eminent domain, or the taking of property. While New Article X authorizes municipalities to incur indebtedness for the purpose of redevelopment, it does not repeal the existing constitutional provision on eminent domain contained in Article 1, Section 13 of the Constitution.

Moreover, all prior legislation authorizing the power of eminent domain in redevelopment work[1] limits such condemnation to areas that are "predominantly slum or blighted." In view of the trial judge's finding that the city block in question was not a slum or blighted area, it was error for him to hold that New Article X offered an additional sustaining ground for the City's position.

In view of our disposition of these issues, it is unnecessary to reach the remaining exceptions raised by appellants. We reverse the order of the trial court and enjoin the City of Charleston from entering into the proposed contract with Holywell Corporation.

Reversed.

Lewis, C. J., and Littlejohn, Rhodes and Gregory, JJ., concur.

---

[1] See 1976 Code Section 5-7-50 and Act No. 536 of 1971.