21673

CHARLESTON COUNTY AVIATION AUTHORITY, Appellant- Respondent, v. Robert C. WASSON, Chairman, John H. Lafitte, Jr. and Charles N. Plowden, constituting the South Carolina Tax Commission and Robert W. Ragin, Tax Assessor for Charleton County, South Carolina, Respondents, of which Robert W. Ragin is, Respondent-Appellant.

(289 S. E. (2d) 416)

*Edward D. Buckley,* Charleston, *for appellant-respondent.*
*Augustine T. Smythe* of *Buist, Moore, Smythe & McGee,* Charleston, *for respondent-appellant.*

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Asst. Atty. Gen. Jackson E. Fields, Jr.,* Columbia, *for respondent South Carolina Tax Com'n.*

March 17, 1982.

*Per Curiam:*

In this property tax case, the Charleston County Tax Assessor determined fifteen portions of property owned by the Charleston County Aviation Authority were subject to ad valorem taxation. The South Carolina Tax Commission reversed the Assessor's decision as to thirteen of the properties. Thereafter, the Circuit Court affirmed the action of the Commission. We are of the view that the Order of the Honorable Joseph R. Moss, Presiding Circuit Judge, dated February 28, 1981, properly set forth and disposes of the issues now presented to this Court. Let his Order, as modified, be herewith published as the directive of this Court.

## ORDER OF JUDGE MOSS

At issue is whether certain property of the Charleston County Aviation Authority, herein referred to as "Authority", is exempt from ad valorem taxation.

Amendments to Article X of the South Carolina Constitution were proposed and submitted to the electors by Joint Resolution 750, Acts of 1976, 59 Stat. 2217. By popular vote the amendments were approved and subsequently ratified by Act 71, Acts of 1977, 60 Stat. 90, that became effective November 30, 1977. Section 3 of the amended article provides certain specific exemptions of property from ad valorem taxation, authorized the General Assembly to grant others, and repealed as of March 1, 1978 "all exemptions not specifically provided for or authorized" by the amended article. The article further directed the General Assembly to provide "for methods and procedures" to be used in applying for the exemption.

The procedure and other exemptions were provided by Act 621, Acts of 1978, 60 Stat. 1786, that is codified in part as § 12-37-220 of the 1976 Code, as amended.

Section 3(a) of Article X, as amended, provides for an exemption from taxation of ". . . all property of the state, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for public

purposes." With reference to that exemption and the requirements therefor, the General Assembly in the 1978 Act provided:

Pursuant to the provisions of Section 3 of Article X of the State Constitution, there shall be exempt from ad valorem taxation:

(1) All property of the State, counties, municipalities, school districts, Water and Sewer Authorities and other political subdivisions, if the property is used exclusively for public purposes, *and it shall be the duty of the Tax Commission and county assessor to determine whether such property is used exclusively for public purposes;*

S. C. Code Ann., § 12-37-220 A(1) (1976, as amended). (Emphasis added.)

As seen, the Tax Commission and the county assessor are to determine whether the property is used exclusively for a public purpose. The procedure adopted therefor was that the county tax assessor was to make the initial determination. Should the property owner except to that determination, the Tax Commission would then consider the matter.

Operating under such a procedure the Tax Assessor of Charleston County found the use of certain property of the Authority to be for a non-exclusive public purpose. The property is that which is leased to private businesses that operate for profit.

The Authority, excepting to the assessor's determination, sought review by the South Carolina Tax Commission. The Tax Commission determined that some of the property was used for an exclusive public purpose and some was not.

The Authority thereafter initiated this action under §1-23-380 for the judicial review of the determinations. The assessor filed a cross-petition and the matter is now before the court upon such petitions.

The Charleston County Airport District was created as a political subdivision of the State by Act 1235, Acts of 1970, 56 Stat. 2634. It encompasses the geographical area of

Charleston County. The Authority was created by the governing body of the District to carry out the District's function of acquiring, constructing, operating and maintaining an adequate airport for the District. *Torgerson v. Craver,* 267 S. C. 558, 230 S. E. (2d) 228 (1976). In that case it was held that the issuance of bonds by the Authority was a county matter.

The Authority in conformance with its purposes acquired an airport terminal and adjacent lands. It rents or leases property to Delta, Eastern, National and Piedmont Airlines. The property is used by the airlines to service the transportation needs of passengers and freight of the airport. The Authority also rents or leases property to Avis, Budget, National, Dollar and Hertz car rental companies. These companies use the property to serve the land transportation needs of passengers of the airport. Dobbs House rents or leases space for a restaurant, snack bar, lounge and gift shop, providing various services to meet the needs of passengers. The parking lot for vehicles of airport passengers is leased or rented to Air Terminal Parking. Airport Limousine and Taxi Service also rents or leases property that is used in serving the land transportation needs of the airport passengers. Property is additionally rented or leased to Carolina Air Terminal, Inc. The company uses the property in providing cargo facilities to air carriers.

The above lessees or tenants are private business entities that operate their respective businesses for profit. The assessor determined that the property so leased or rented was not used for exclusive public purposes. The basis for the assessor's determination was that the property, in addition to its public use, was used for private purposes; for example, for the benefit of the lessees and tenants. Such private use, in the assessor's opinion, precluded an exclusive public use. The Tax Commission, however, found this property to have been used for exclusive public purposes. The assessor in this proceeding thus contends that the Commission's determination was in error.

In addition to the above property the Authority also leases or rents property to Hawthorne Aviation Company. It, like the other businesses, is private and operates for profit. The

use of the property by Hawthorne is not clearly set forth. The affidavit of the Airport Director is that Hawthorne's principle function is to service general aviation. It provides a terminal, fuel and repair facilities as well as incidental services. It appears that Hawthorne provides charter and other services.

The Authority also owns and leases or rents an airport on John's Island to a private business, Aero Aviation. That company provides a terminal, communication with approaching and departing aircraft and controls the operation of the airfield. The revenue for such activities is retained by the company.

Both the assessor and the Tax Commission found these two properties to be used for a non-exclusive public purpose. The Authority thus seeks a review of those determinations, contending the same to be in error.

The general rule is that a strict construction is required of constitutional and statutory provisions that grant exemptions or deductions from taxation. "Constitutional and statutory language creating exemptions from taxation will not be strained or liberally construed in favor of taxpayer claiming the exemption." *York County Fair Assn. v. South Carolina Tax Commission,* 249 S. C. 337, 341, 154 S. E. (2d) 361, 363 (1967). For other cases see 17 West's S. C. Digest, *Taxation,* Key No. 204.

An exception to that rule exists, however, for municipal or publicly-owned property.

The general rule is that exemptions of private property are strictly construed, because in such cases taxation is the rule and exemption the exception; but exemptions of the property of municipal corporations are liberally construed, for exemptions of such property is the rule and taxation the exception. With us municipal corporations are merely agencies of the state for governmental purposes; and it has never been the policy of this state to tax its own agencies or instrumentalities of government. From which we conclude that the provision should be construed liberally in favor of the exemption claimed.

*Town of Myrtle Beach v. Holliday,* 203 S. C. 25, 30, 26 S. E. (2d) 12, 14 (1943), citing *State v. City of Columbia,* 115 S. C. 108, 112, 104 S. E. 337, 338 (1920).

The fact that the property is used by a private business entity does not preclude the use from being public. The people of this State in Article X recognized that a private entity could use property for a public purpose. In Article X, § 4, there is exempt from taxation the property of a charitable trust or foundation when used exclusively for a charitable and public purpose. While there is no profit motive for such a foundation or trust, the same are private entities that serve by their charities a public purpose. The property occupied by such entities and used for such purposes is exempt from taxation.

In addition, similar language was judicially considered by our court in the case of *State v. City of Columbia, supra.* The specific language was that the property to be exempt had to be used ". . . exclusively for public purposes, and not for revenue, by any city, town or village." *Id.* at 110, 104 S. E. at 337.

The facts in the *Columbia* case were as follows:

The city hall of Columbia contains many rooms and apartments which are used as offices by the officers and employees of the city. It contains also what is known as the City Opera House, or Columbia Theater. The city council has always leased the theater to private persons, who have procured theatrical, musical, and other entertainments, to which the public have been admitted on payment of reasonable charges. The city council has always exercised the right of supervision, so as to prevent any exhibition or performance against good morals, and also the right to use the auditorium for public gatherings of a religious, charitable, educational, industrial, social or political nature; and it has been so used on many such occasions without charge, except the actual cost of opening, heating, and lighting it. The record of the city council shows that the theater was built in the city hall, because private capital could not be induced to build one; and, from the foundation of the city, there has been no other

place in the city where such public entertainments could be given, or such public gatherings be held.
*Id.*

It was held that the property under such facts qualified for the exemption. Its use was for exclusive public purposes, notwithstanding the lease to private persons. Even though revenue was incidentally derived, leasing was ". . . merely an expedient way of giving effect to the purpose." *Id.* at 113, 104 S. E. at 338.

> ■ The present constitutional language does not provide for a prohibition of revenue. Such further reflects that a public purpose may be performed by private business. When the use of property is for a public purpose, an incidental private use or benefit will not negate or alter the public purpose use of the property. If such were not the case, a substantial portion of public property could be taxed. What would happen with public highways and streets that are used in part by private utilities? No one would suggest that a tax should be applied to that property. Further, one would not seriously argue that part of a publicly-owned building was taxable because a concession was operated therein by an individual.

Legislation has been held to be for a public purpose notwithstanding individual profit. "At the same time legislation is not for a private purpose as contrasted with a public purpose merely because some individual makes a profit as a result of the enactment." *Anderson v. Baehr,* 265 S. C. 153, 162, 217 S. E. (2d) 43, 47 (1975).

It is therefore the opinion of this court that property may be used exclusively for a public purpose notwithstanding an incidental private use of the property. Having reached this conclusion it is now necessary to consider whether the use of the Authority's property by the lessees or tenants for private purposes was incidental to the public purpose.

Our court in the case of *Archambault v. Sprouse,* 218 S. C. 500, 63 S. E. (2d) 459 (1951), held: "The word 'incidental' is defined in Black's Law Dictionary, Third Edition, as follows: 'Depending upon or appertaining to something else as

primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose.'" *Id.* at 507, 63 S. E. (2d) at 462; See also *Words and Phrases.*

A similar definition is applicable here. The duty of the Authority is to provide and operate an air transportation facility for the public. Obviously, for the public to have air transportation it is necessary that it be furnished by private business. The Authority does not transport passengers or freight. Equally, passengers must have land transportation, a place to park or store vehicles, and available food or meals. All are customarily performed by private businesses and are recognized and accepted as being a necessary part of an airport such as here involved.

■ The construction and operation of the airport is a public purpose use.

In *Parrott v. Gourdin, et al., supra,* we had occasion to observe: "With the development of aviation, the Courts of many jurisdictions in recent years have been called upon to determine whether the establishment and maintenance of a public airport is a corporate purpose and they appear to hold rather uniformly that such expenditure does constitute a corporate purpose." [205 S. C. 364, 32 S. E. (2d) 14, 16]. Numerous decisions from other jurisdictions holding that the use of public funds for the construction, maintenance and operation of a municipal airport is for a public purpose are collected in annotations in 62 A. L. R. 777, 69 A. L. R. 325, 83 A. L. R. 345, 99 A. L. R. 182, and 161 A. L. R. 733. These annotations disclose that it has been held without exception that the establishment of an airport is for a "public purpose" within the meaning of constitutional provisions restricting the power of taxation to such purpose. After mature consideration, we think the conclusion reached in these decisions is sound. *Evatte v. Cass,* 217 S. C. 62, 64, 59 S. E. (2d) 638, 639 (1950).

■ With the exception of the property leased or rented to Hawthorne Aviation and Aero Aviation, the private use of the Authority's property by the lessees or tenants

is incidental to the public use. The services rendered by those companies are necessary and pertain to the purpose for which the Authority was created. Without their services passenger and freight transportation would not be available, or if available, would be materially limited or restricted.

Such, however, is not the case with property used by Hawthorne and Aero Aviation. It was stated in *Anderson v. Baehr, supra,* that: "As a general rule a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents, or at least a substantial part thereof." *Id.* 265 S. C. at 162, 217 S. E. (2d) at 47. The use of the property by these companies does not meet this criterion. It is not necessary that all people benefit for the use to the public. However, a substantial part must be benefited. No evidence of such benefit is established or implied, nor can the same be noticed. The primary beneficiaries of the use of this property are the two private companies. Here the public use is incidental to the private use.

The Authority further argues that the assessor is without capacity to seek a review of the Tax Commission's determination. The assessor was made a party and thus has the right to file the cross-petition. If he has the capacity or necessity to be a respondent, he has authority to file the cross-petition. In the absence of such, the assessor is nonetheless a proper party. It is concurrent findings by the Tax Commission and the assessor of non-public use that subject the property to taxation. The General Assembly used the conjunctive word "and," indicating both the Tax Commission and the assessor are to make the determination. This establishes the procedure to determine the taxability of publicly-owned property.

The Authority also argues that the procedure used to make the determination results in unequal treatment. While such is possible, none is shown for Charleston County. Each county is a separate entity and uniformity is obtained when taxation is equal within the county. ". . . [E]ach county of the State is a separate taxing district, and revenue measures may be applied therein which affect only citizens

or property within the territory of the county." *Anderson v. Page,* 208 S. C. 146, 151, 37 S. E. (2d) 289, 291 (1946). ". . . [U]niformity of taxation must be coextensive with the territory to which the tax applies." *Smith v. Robertson,* 210 S. C. 99, 119, 41 S. E. (2d) 631, 640 (1947).

The Tax Commission and the assessor should re-examine the procedure so that the legislative desire for statewide uniformity of tax exemptions can be insured. A failure to tax or exempt similar property in another county, while not desired, constitutes no legal basis to void a proper application in Charleston County where there is equal treatment.

It is thus the opinion of this court that the appeal should be dismissed.