536 S.E.2d 878

**WATERPOINTE I PROPERTY OWNER'S ASSOCIATION, INC., Respondent,**

v.

**PARAGON, INC., Appellant.**

No. 3227.

Court of Appeals of South Carolina.

Heard June 5, 2000.

Decided July 24, 2000.

---

1. 269 S.C. 688, 239 S.E.2d 725 (1977).

Clifford L. Welsh, of North Myrtle Beach, for appellant.

Michael H. Sartip, and Fred B. Newby, both of Newby, Pridgen & Sartip, Myrtle Beach, for respondent.

HEARN, Chief Judge:

In this action for breach of contract and failure to renew insurance, Paragon, Inc. appeals the master-in-equity's failure to grant a directed verdict or enter judgment in its favor. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

This action arises from a contract whereby Paragon, Inc. agreed to manage Waterpointe I Horizontal Property Regime, a high-rise condominium in North Myrtle Beach, South Carolina. In December 1988, Bob Johnston of Paragon presented Waterpointe's Board of Directors with a copy of Paragon's proposal. The proposal stated *inter alia:* "Included in Paragon's routine services will be the supervision of all personnel, subcontractors, contract negotiation, insurance coverage coordination and purchase and other routine functions required in the day to day operation of the Association." After reviewing the proposal, the Board voted that same day to accept Paragon as its new management company. Two Board members, Isidore Melekos and Patricia Wilkie, subsequently negotiated a contract with Paragon. Paragon assumed management of Waterpointe on January 1, 1989.

At the April 15, 1989 Board meeting, Johnston requested budget amendments for certain improvements and repairs. The Board voted not to amend the budget and advised Johnston to abide by the December 1988 budget he had helped develop. The budget is derived from homeowner assessments, interest income and vending proceeds.

In August 1989 the Board discovered Johnston was overspending the budget. The very next month, Hurricane Hugo hit Myrtle Beach. Melekos testified he went to Waterpointe the day after Hugo and discovered Johnston had not taken action to protect Waterpointe from the storm. The electricity was still on. Both elevators were on the ground floor flooded with seawater and covered with sand. The ground floor, fence and gates, lattice work, decking, pool and pool furniture, carpet, and lobby were destroyed or heavily damaged.

The Board was not able to meet again until October. At its October meeting, the Board learned it had some accounts receivable and only a few hundred dollars in the Waterpointe account. Additionally, the Board discovered Johnston had spent the previous year's reserve of $45,000.00. Moreover, Johnston informed the Board that Waterpointe did not have flood insurance to cover much of Hugo's damage. This was the first time the Board learned there was no flood insurance in place.

The Board fired Paragon in November and hired a CPA firm to undertake an audit of the way Paragon had spent Waterpointe's money. On August 13, 1991, Waterpointe initiated this action against Paragon alleging various causes of action, including breach of contract and failure to renew insurance. Waterpointe sought damages of $25,490.00 on the breach of contract action and actual damages of $126,000.00 on the failure to renew insurance cause of action. Several causes of action were subsequently dismissed via motions by Paragon.

The case was heard by a master-in-equity on July 22 and 23, 1996. Paragon moved for a directed verdict at the close of Waterpointe's case. The master declined to rule on the motion initially, and Paragon declined to put up any evidence. The master ultimately rendered judgment in favor of Waterpointe for $25,490.00 on the breach of contract cause of action, and $79,703.86 for failing to renew the flood insurance. Paragon appeals the master's denial of its motion for directed verdict and the master's failure to enter judgment in its favor.

## LAW/ANALYSIS

### Scope of Review

 We note initially that while Paragon's motion at the close of the evidence was couched as a "directed verdict" motion, governed by Rule 50, SCRCP, this was a non-jury action. As Rule 50 by its nature is applicable to jury trials, the proper motion for Paragon to have made was a motion for involuntary non-suit under Rule 41, SCRCP. "After the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant, ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Rule 41(b), SCRCP; see Ducworth v. Neely, 319 S.C. 158, 159 n. 1, 459 S.E.2d 896, 897 n. 1 (Ct.App.1995) (noting that motion styled directed verdict in non-jury action actually was a motion for involuntary non-suit under Rule 41(b), SCRCP, and therefore reviewing as such). Rule 41(b) allows the judge as fact finder to weigh the evidence and determine the facts. Johnson v. J.P. Stevens & Co., 308 S.C. 116, 118, 417 S.E.2d 527, 529 (1992). Therefore, Paragon's appeal is from the master's factual findings as a judge in a non-jury action at law. See

*South Carolina Fed. Sav. Bank v. Thornton–Crosby Dev. Co.,* 310 S.C. 232, 235, 423 S.E.2d 114, 116 (1992) (stating an action seeking money damages for breach of contract is an action at law); *Roberts v. Gaskins,* 327 S.C. 478, 483, 486 S.E.2d 771, 773 (Ct.App.1997) (same). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Associates, Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). Thus, this court must affirm if there is any evidence to support the master's findings.

## Failure to Renew Insurance

■ Paragon first contends the master erred in failing to enter judgment or to grant a directed verdict in its favor on the failure to renew insurance cause of action. Paragon's argument is premised on the ground the failure to renew cause of action sounds in tort rather than in contract. We disagree.

Waterpointe's complaint provides in pertinent part:

14. That the Defendant had a duty to care for, preserve and maintain the property of the Association and to insure that proper insurance coverages were in place to care for and preserve the property. That the contract, under Paragraph 3(b)(4) specifically allocates certain responsibilities concerning insurance coverage placements and renewals to the Manager, and the Board of Directors further, and specifically, allocated, directed and requested the Manager to undertake the placement of insurance coverages and the renewals of those that were so necessary.

15. That the defendant did undertake the responsibilities and obligations for the placement and renewal of all insurance coverages at the Association through the course of its ongoing Contract.

16. That the Defendant did fail to renew the underlying flood insurance coverage on the property of the Association for the year 1989, and as a result, when Hurricane Hugo struck the coast of South Carolina in September of 1989, the Association was without proper underlying flood insurance coverage.

17. That there was extensive damage to property of the Association as a result of Hurricane Hugo, the damage to said property being in excess of One Hundred Twenty–Six Thousand and No/100s ($126,000.00) Dollars of insurable interest in the property of the Association. *That as a direct result of the breach of Contract of the Manager and breach of direct instructions and directions from the Board of Directors, the Association has been damaged by the lack of flood insurance coverage for those insurable items that would have been covered under such underlying Flood Insurance Policy.*

(emphasis added). The last line of the above paragraph of the complaint reveals it is an action in contract rather than tort. Clearly there is a breach of duty alleged; however, that duty arose solely from the contract. Thus, we hold the premise for Paragon's argument—that the action is one in tort—is without merit.

█ Paragon further claims even if the action is one in contract, the contract is the complete agreement between the parties and there is no evidence in the record Paragon owed a contractual duty to Waterpointe to obtain flood insurance. We disagree.

The record reveals Paragon's management proposal listed the purchase and coordination of insurance coverage as part of the Manager's "routine service." The contract between Waterpointe and Paragon allowed Waterpointe to delegate the duty to obtain insurance to Johnston. The applicable contract provision stated:

4. The MANAGER [Johnston] has the right, but not the duty, to make recommendations to the Board of Directors as to the form or forms of insurance needed to protect [Waterpointe], and which may be required to comply with the provisions of the Condominium Documents. The MANAGER shall assist the Board in acquiring insurance policies for [Waterpointe] as outlined in the Condominium Documents. [Waterpointe] may delegate to the MANAGER its sole and exclusive authority to obtain bids for, contract to purchase and actually purchase such insurance for [Waterpointe] as the MANAGER in its sole discretion shall deem advisable and in the best interests of [Waterpointe]. In

such event, the MANAGER shall solicit and actually receive bids for such insurance, except in the event of an emergency requiring immediate coverage. [Waterpointe] agrees to add MANAGER to any and all liability insurance policies as a named insured.

The contract does not contain a merger clause indicating it is the complete agreement between the parties. Patricia Wilkie, President of the Board of Directors in 1988 and 1989, testified Johnston was placed in charge of all of Waterpointe's affairs and she believed the Board delegated the responsibility for the purchase and placement of insurance to Johnston and Paragon. Furthermore, Johnston sent Wilkie a letter dated July 13, 1989 advising her of Waterpointe's insurance coverage. The letter stated: "Insurance was renewed on 5/17/89 consistent with last year's coverage. Nationwide was the lowest bidder in light of the coverage required. A summary of the Insurance is attached. We bound this coverage and we will leave it as is unless we here (sic) from you to the contrary." The enclosed attachment from Nationwide Insurance indicated Waterpointe's basic flood insurance was with another agent. The fact that Johnston obtained and purchased insurance for Waterpointe other than flood insurance suggests the Board also delegated its responsibility to obtain flood insurance coverage to Johnston. Clearly there is evidence Johnston and Paragon had the duty to renew Waterpointe's flood insurance.

## Damages

■ Paragon further asserts the Association did not present evidence it suffered damage that would have been covered by flood insurance. Paragon contends the damage to the ground floor at Waterpointe would not have been covered by basic flood insurance even had such insurance been in place at the time of the hurricane. In support of its argument Paragon points to a standard flood insurance policy included in the record. According to Paragon, the policy "excludes spas, pools, decking, as well as areas of a building below the second floor."

Notwithstanding Paragon's assertion, an examination of the basic flood policy indicates it does provide coverage for air conditioners, elevators and other relevant equipment installed prior to October 1, 1987, as well as coverage for debris

removal. Waterpointe was developed in 1983 and 1984. Patricia Wilkie was President of the Board as early as 1984, so Waterpointe was presumably completed by or in 1984. Moreover, plaintiff's exhibit 11, introduced at trial and included in the record, lists numerous damages that clearly would have been covered by the basic flood policy. The master excluded certain damages contained in the exhibit presumably because he found they would not be covered under the policy. However, the master found some of the itemized damages plainly covered under the basic flood policy. The allowable items of damage in exhibit 11 exceed the total amount of the master's verdict. Therefore, we cannot say the record is without evidentiary support for his findings.

### Breach of Contract

Paragon lastly argues the master erred in declining to direct a verdict or enter judgment in its favor on Waterpointe's cause of action for breach of contract. Paragon asserts Waterpointe failed to present evidence it incurred any damage from Johnston's overspending of Waterpointe's budget and depletion of reserves. Paragon's argument turns on the fact that all of the money Johnston spent without authorization was spent on Waterpointe, and therefore Waterpointe suffered no net loss. We disagree.

The contract between Paragon and Waterpointe explicitly required Board approval for any expenditure over $1,000.00. Johnston not only overspent the budget he actively assisted in preparing, but also spent the reserve account without informing the Board or obtaining approval. Johnston's actions were a clear breach of the contract. Waterpointe had the right to determine how, when, and what large expenditures were made. Johnston's actions deprived them of the right to prioritize and select large expenditures. As a result of Johnston's actions, Waterpointe was low on cash in October 1989 and without reserves to draw on to pay for repairs necessitated by Hugo. This is sufficient evidence of damage to uphold the master's findings on this cause of action.

Accordingly, for the foregoing reasons, the judgment of the master is hereby

**AFFIRMED.**

ANDERSON and HUFF, JJ., concur.