**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Ryan McAvoy, Individually and on Behalf Of All Others Similarly Situated, Appellant,

v.

The Town of Hilton Head Island, South Carolina, Respondent.

Appellate Case No. 2024-000961

———————

Appeal From Beaufort County
Jocelyn Newman, Circuit Court Judge

———————

Unpublished Opinion No. 2026-UP-163
Heard October 8, 2025 – Filed April 1, 2026

———————

**REVERSED AND REMANDED**

———————

James G. Carpenter and Jennifer J. Miller, both of Carpenter Law Firm, PC, of Greenville, for Appellant.

Curtis Lee Coltrane, of Coltrane & Wilkins, LLC, of Hilton Head Island, for Respondent.

———————

**PER CURIAM:** Ryan McAvoy appeals the circuit court's Rule 41(b), SCRCP, dismissal of his complaint. McAvoy argues the circuit court erred by failing to rule that the Town of Hilton Head Island's (the Town's) grant of public funds to

assist the South Island Dredging Association (SIDA) in dredging the Harbour Town Yacht Basin (the Basin), Braddock Cove Creek, and their entrance channels violated article X, sections 5 and 11 of the South Carolina Constitution. We reverse and remand to the circuit court for a new trial.

## FACTS AND PROCEDURAL HISTORY

This action arises from the Town's expenditure of $600,000 in public funds for the dredging of the Basin, Braddock Cove Creek, and their entrance channels. This expenditure subsidized a $5 million dredge project organized by SIDA. SIDA is a group made up of the Gull Point Association, South Beach Property Owners Association, South Beach Marina, Baynard Property Owner Group, and the boat slip owners in Harbour Town Yacht Club. SIDA exists to promote navigation within Sea Pines Plantation[1] and organizes dredging of the areas within Sea Pines Plantation.

On May 3, 2022, the Town adopted a resolution authorizing the Town manager to enter into an agreement with SIDA to provide $600,000 in funding assistance for the dredging of the Basin and Braddock Cove Creek. The resolution stated that "routine dredging is necessary in order to maintain navigability for vessels traveling to and from [the Basin] and Braddock Cove Creek." It further provided that "the general public utilizes [the Basin] and Braddock Cove Creek for docking, sightseeing, navigation, access to public and other amenities and other tourism related activities" and that "the routine dredging of these waterways is necessary to support this tourism related activity." The resolution additionally stated that "the proposed [a]greement is in the best interest of and will provide benefits to the general health, safety, and welfare of the citizens of the Town."

The agreement between the Town and SIDA stated that "[the] Basin and Braddock Cove Creek are used by the general public for docking, sightseeing, navigation, access to public and other amenities and other tourism related activities" and that the absence of dredging would cause Harbour Town Marina and Braddock Cove Creek to "lose their usefulness, reputation, and ability to generate significant tourism related economic activity for Hilton Head Island."

---

[1] Also known as "Sea Pines Resort" and "Sea Pines," Sea Pines Plantation is a resort comprising one-third of Hilton Head Island. The Basin and Braddock Cove Creek are located within Sea Pines Plantation.

McAvoy filed this action for declaratory judgment and injunctive relief, alleging the Town's use of public funds to subsidize SIDA's dredging project violated article X, sections 5 and 11 of the South Carolina Constitution. The case proceeded to a bench trial.

During trial, McAvoy called Mare Deckard, who testified she had navigated the waterways of both Harbour Town Marina and Braddock Cove Creek. Deckard testified that when she entered the mouth of the channel at the Basin, a person standing on the dock master's dock asked her why she was there. Deckard stated she told the person she was there to have lunch and she then drove her boat in a half circle around the Basin and came back out. Deckard recalled she observed a sign posted outside the Basin that stated, "WELCOME BEFORE ENTERING PLEASE CONTACT HARBOUR TOWN [phone number listed]." Deckard testified she then went to South Beach Marina, which is in Braddock Cove Creek. She explained she saw two signs: one that stated, "Lunch Dock" and another that stated, "PRIVATE MARINA All vessels must contact [phone number listed] prior to docking." She indicated she then secured her boat at the Lunch Dock and ate lunch at the Salty Dog Cafe, which abuts the dock. Deckard testified she then cruised to Gull Point and turned around. Deckard stated she did not see any signage like the Lunch Dock signs at Gull Point Marina or the Braddock Community dock. Deckard testified she photographed the signs that she observed. The court admitted these photographs into evidence.

McAvoy also called SIDA president, John Brinkley, who testified SIDA had privately funded the entire dredging project in the past and first obtained a subsidy from the Town in 2017. Brinkley testified the members of SIDA dredge the Basin, Braddock Cove Creek, and their entrance channels to "preserve navigation . . . [and] the principal reason is to utilize your boat." Brinkley also testified that the dredging gives him "the satisfaction of seeing that we're maintaining the waterways." When asked if there was a financial component to the dredging, Brinkley stated, "Not really."

Upon the conclusion of McAvoy's case, the Town moved to dismiss his claims under Rule 41(b), SCRCP.[2] The Town first argued McAvoy did not have standing,

---

[2] *See* Rule 41(b), SCRCP ("For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff in an action tried by the court without a jury has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted,

but the circuit court rejected this argument. The Town next argued McAvoy had provided no evidence to support his assertion that the Town had spent public money on private property. The Town argued the dredged waters are public waters and the existence of permitted marina or dock structures within those waters does not change the nature of the waterways. The Town noted that Deckard was free to travel these waterways. The Town also argued that SIDA fully paying for the dredging in the past did not make it illegal for the public to subsidize the dredging now. Further, the Town asserted the waterways are a public asset. In contrast, McAvoy argued the Town used public money for private purposes and it benefited private parties. He argued the benefits to the private parties were not an incidental benefit but instead constituted the main purpose of the expenditure.

The circuit court granted the motion, finding the existence of privately owned marinas or docks in the public waterways did not change the nature or ownership of the waterways or prohibit the use of public funds to maintain the waterways.[3] The circuit court emphasized Deckard was able to access the waterways as a member of the public. The circuit court therefore found McAvoy had failed to produce evidence to show that the Basin, Braddock Cove Creek, and their entrance channels were private, as opposed to public, waterways, and thus failed to show a right to relief. This appeal followed.

## STANDARD OF REVIEW

---

may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)[, SCRCP]. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision . . . operates as an adjudication upon the merits.").

[3] We note the circuit court initially orally denied the Rule 41(b) motion but granted a directed verdict in favor of the Town. However, the court's subsequent written order granted the Rule 41(b) motion with no mention of a directed verdict. Therefore, the written order controls. *See Corbin v. Kohler Co.*, 351 S.C. 613, 621, 571 S.E.2d 92, 97 (Ct. App. 2002) ("To the extent the written order may conflict with the prior oral ruling, the written order controls." (quoting *Parag v. Baby Boy Lovin*, 333 S.C. 221, 226, 508 S.E.2d 590, 592 (Ct. App. 1998))). Additionally, directed verdict is only appropriate in jury trials. *See Waterpointe I Prop. Owner's Ass'n, Inc. v. Paragon, Inc.*, 342 S.C. 454, 458, 536 S.E.2d 878, 880 (Ct. App. 2000) (noting a motion for directed verdict is inappropriate in a nonjury action).

"Whether an action should be dismissed for failure to prosecute is left to the discretion of the trial court judge, and his decision will not be disturbed, except upon a clear showing of an abuse of discretion." *McComas v. Ross*, 368 S.C. 59, 62, 626 S.E.2d 902, 904 (Ct. App. 2006).

## ISSUE ON APPEAL

Did the circuit court err by granting the Town's motion for involuntary nonsuit under Rule 41(b), SCRCP?

## LAW AND ANALYSIS

McAvoy argues the circuit court erred by failing to rule that the Town's grant of public funds to assist SIDA in dredging the Basin and Braddock Cove Creek violated article X, sections 5 and 11 of the South Carolina Constitution. Although McAvoy frames the question in this way, we restrict our analysis to the narrow issue of whether the circuit court erred by dismissing the case under Rule 41(b), SCRCP, under these facts. We hold the circuit court erred by granting the Town's Rule 41(b) motion to dismiss, and we reverse and remand for a new trial.

> Article X, section 5 of the South Carolina Constitution provides [that] "[a]ny tax which shall be levied shall distinctly state the public purpose to which the proceeds of the tax shall be applied." Thus, all taxes levied must be used towards a public purpose. *See Feldman & Co. v. City Council of Charleston*, 23 S.C. 57, 62 (1885) ("Hence it seems to be universally conceded, even by those who are disposed to enlarge the taxing power of the legislature to its greatest extent, that a law authorizing taxation for any other tha[n] a public purpose is void."). "In deciding whether governmental action satisfies a public purpose, we look to the object sought to be accomplished." *Carll v. S.C. Jobs-Econ. Dev. Auth.*, 284 S.C. 438, 443, 327 S.E.2d 331, 334 (1985). "As a general rule a public purpose has for its objective the promotion of the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents, or at least a substantial part

thereof." *Anderson v. Baehr*, 265 S.C. 153, 162, 217
S.E.2d 43, 47 (1975).

*S.C. Pub. Int. Found. v. S.C. Dep't of Transp.*, 421 S.C. 110, 123, 804 S.E.2d 854, 861 (2017).

Article X, section 11 of the South Carolina Constitution provides, in relevant part, "The credit of neither the State nor of any of its political subdivisions shall be pledged or loaned for the benefit of any individual, company, association, [or] corporation . . . ."

"Because the text of the Constitution is the surest guide to its meaning, we must give the words used in a constitutional provision their ordinary and popular meaning and enforce them as they were written and approved by the people of South Carolina." *Eidson v. S.C. Dep't of Educ.*, 444 S.C. 166, 182, 906 S.E.2d 345, 353 (2024). "Constitutional interpretation begins with the text itself, and when the meaning of the text is plain that is also where our inquiry ends." *Id.* "Article X of the Constitution of 1895 is a document that reeks of fiscal restraint. Especially abhorrent to Article X is the use of public funds by private entities whether they be railroads or hospitals." *Id.* at 187, 906 S.E.2d at 356 (quoting III James Lowell Underwood, *The Constitution of South Carolina* 170-71 (1992)).

McAvoy contends the Town used public funds to subsidize the dredging with the primary purpose of assisting SIDA members in maintaining access to and from their privately owned boat slips, docks, and marinas. McAvoy asserts Brinkley admitted the primary purpose of the dredging was to maintain free passage for SIDA members to and from their private boat slips, docks, and marinas. McAvoy further emphasizes Sea Pines Plantation is a private, gated community. He argues the partial public location (the waterways) included in the dredging does not render the purpose public. Further, McAvoy avers that the public funds are fungible and the circuit court erred in ruling he must prove, in essence, that none of the areas touched by the dredging were public. To support his argument, McAvoy cites *Anderson*, 265 S.C. at 157, 163, 217 S.E.2d at 44, 48 (holding the Bond Act, which empowered any incorporated municipality in the state to enter into agreements providing for the acquisition of real estate to be leased or conveyed to a private person, firm, or corporation, was unconstitutional because it was "primarily to the benefit of the developer, with no assurance of more than negligible advantage to the general public" and it was not sufficient that the undertaking created a "remote or indirect public benefit"), and *South Carolina Public Interest Foundation*, 421 S.C. at 123, 804 S.E.2d at 861 (holding the expenditure of public funds to inspect

three bridges inside a private, gated community was unconstitutional because "the owners of the bridges were the beneficiaries of the inspection, not the public at large, whose access to the bridges [wa]s limited"), among other cases.

We hold the circuit court abused its discretion by granting the Town's Rule 41(b), SCRCP, motion to dismiss. The circuit court erred by framing the issue as a question of whether the waterways were publicly owned as opposed to whether the purpose of the expenditure was intended to promote the public health, safety, morals, general welfare, security, prosperity, and contentment of all the inhabitants or residents or a substantial part thereof and whether the expenditure benefitted the public. *See Anderson*, 265 S.C. at 163, 217 S.E.2d at 48 (holding the Bond Act was unconstitutional because it did not serve a public purpose or provide a primarily public benefit). Further, Deckard testified she was questioned when she entered the Basin, and McAvoy provided photographic evidence of signs showing both the Basin and South Beach Marina in Braddock Cove Creek were private. Although Deckard was allowed to enter the Basin after stating she was there for lunch, the Basin contains limited navigable waters. McAvoy presented evidence showing the Basin serves primarily Sea Pines Plantation, which is a private, gated community.[4] Under the plain text of article X, sections 5 and 11, we find McAvoy has made a sufficient evidentiary showing to survive the motion to dismiss. The circuit court therefore erred by granting the Town's Rule 41(b) motion to dismiss.

**REVERSED AND REMANDED.**

**KONDUROS, GEATHERS, and VINSON, JJ., concur.**

---

[4] In contrast, the evidence indicates Braddock Cove Creek has more navigable water; members of the public could navigate and enjoy the waters around the marinas without entering any of the marinas. However, we are inclined to believe that if funds were misused in the Basin, then the whole subsidy would be deemed unconstitutional. We clarify that we are making no holding on the merits of McAvoy's claim here.